EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FERNANDO RIVERA ESCUTÉ, acusado y apelante.

Núm. 11334.—*Sometido:* Abril 4, 1946. *Resuelto:* Junio 5, 1946.

---

*Santos P. Amadeo, Gilberto Concepción de Gracia* y *F. Hernández Vargas,* abogados del apelante; *Hon. Procurador General E. Campdel Toro, Luis Negrón Fernández, Primer Procurador General Auxiliar* y *J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante, acusado y convicto de asesinato en primer grado por haber dado muerte ilegal a Phillip Houston fué sentenciado a la pena de reclusión perpetua e interpuso el presente recurso de apelación imputándole a la corte *a quo* la comisión de cuatro errores.

El primer señalamiento está basado en la admisión, como prueba, de la confesión que por escrito y bajo juramento hiciera el acusado ante el Fiscal durante la investigación del caso. Sostiene el apelante que esta prueba era inadmisible porque la alegada confesión la hizo el acusado ante el Fiscal sin renunciar expresa e inteligentemente su derecho a no incriminarse, ya que según declaración del profesor Alfredo Silva de la Universidad de Puerto Rico, el acusado era un retardado mental del tipo "morón", quien no pudiendo comprender el alcance de las advertencias legales que le hiciera el Fiscal antes de recibir su confesión, no podía estar en condiciones de saber las consecuencias de ésta. También alega como fundamento del alegado error que el privilegio constitucional de no incriminarse que tiene un acusado se aplica al examen preliminar (*preliminary hearing*) y cita para sostener su aserto la doctrina sentada en el caso de *Woods* v. *United States,* 128 F.2d 265, 270.

Empezaremos por decir que ni nuestra Ley Orgánica ni nuestros estatutos contienen disposición alguna que requiera para la validez y admisión de una acusación o confesión una vista preliminar del caso (*preliminary hearing*). La doctrina sentada en el caso de *Woods* v. *United States,* supra, se refiere a aquellos casos en que se celebra una vista preliminar en cumplimiento de las disposiciones constitucionales o estatutarias del estado en que rigen. De acuerdo con el artículo 3 del Código de Enjuiciamiento Criminal, cuando se trata de un delito, como el del caso de autos, sobre el cual tiene jurisdicción original la corte de distrito, el proceso deberá iniciarse "en virtud de acusación presentada por el fiscal en sala de justicia y confirmada con su declaración jurada que será suficiente si en ella se expresa que la acusación se funda en las declaraciones de testigos juramentados por él o las declaraciones de testigos examinados ante un juez instructor". Véase *Pueblo* v. *Travieso,* 60 D.P.R. 530.

Se alega en defensa del apelante que éste es uno de esos "morones" a quienes todo el mundo califica como idiotas por tener la mentalidad baja, según palabras textuales del testigo de la defensa Alfredo Silva, profesor de la Universidad de Puerto Rico y que, por lo tanto, su derecho a no incriminarse no pudo ser renunciado inteligentemente. El artículo 12 del Código Penal, entre otras cosas, dispone: "Se reputan de sano juicio todos los que no sean idiotas, lunáticos o locos." Esta presunción es necesario desvirtuarla por medio de prueba convincente. La prueba aducida con el propósito de demostrar que el acusado es un "morón", o sea, un retardado mental, a nuestro entender, así como el de la corte y jurado que intervino en el caso, no es suficientemente convincente para destruir la presunción antes aludida ni para sostener la contención de la defensa. Por el contrario, un estudio cuidadoso de la confesión que hiciera bajo juramento el acusado ante el fiscal, nos induce a creer, por la forma coherente y consciente en que éste contestara todas y cada una de las preguntas que le fueran formuladas, que las respuestas a dichas preguntas no podían ser el producto de la mente de un "morón".

El segundo de los errores imputados a la corte sentenciadora consiste en haber ésta resuelto que la confesión hecha por el acusado no había sido conseguida mediante coacción física y moral. Para sostener esta alegación presentó el testimonio de su hermano Alfonso Rivera Escuté, de su hermana Otilia Rivera Escuté y de su tío Cruz Escuté, quienes declararon, el primero, que vió cuando en el Cuartel de la Policía de Santurce varios policías le pegaban a su hermano el acusado, sin determinar si estos hechos ocurrieron antes o después de prestar su confesión, y los otros, solamente declararon que vieron al acusado con la cara y el cuello hinchado sin relacionar su estado físico con la confesión prestada. Para controvertir esta prueba, el Fiscal presentó la declaración del Fiscal José C. Aponte, quien informó

que el acusado confesó voluntariamente la comisión del delito después de haberle hecho las advertencias de rigor y que en ningún momento y especialmente cuando el acusado prestara su confesión, notó que estuviera golpeado o que se quejara de algo, y que declaró tranquilamente. También declararon los detectives Porfirio Vega y Susano González que el acusado estuvo bajo su custodia y que en ningún momento persona alguna le pegó en su presencia. La corte inferior admitió la confesión como evidencia en el caso e instruyó debidamente al jurado en cuanto a su deber de rechazarla si después de considerar la evidencia en cuanto a la alegada coacción llegasen a la conclusión de que la confesión no había sido prestada voluntariamente. El jurado resolvió el conflicto de esta prueba en contra del acusado y no existe razón alguna que nos induzca a determinar que la corte erró.

██ En su tercer señalamiento alega el apelante que la corte inferior erró al resolver que no se privó al acusado del derecho constitucional y estatutario de estar asistido por abogado en el examen preliminar. Descansa su contención en las disposiciones de los artículos 44, 11 y 141 del Código de Enjuiciamiento Criminal y en el artículo 2, inciso 2 de nuestra Carta Orgánica y la doctrina sentada en los casos de *Woods* v. *United States,* supra, *Powell* v. *Alabama,* 287 U. S. 45, *Johnson* v. *Zerbst,* 304 U. S. 458, *People* v. *Napthaly,* 105 Cal. 641, y otros. Repetiremos, para resolver la cuestión legal planteada, lo que dijimos en el caso de *Pueblo* v. *Travieso,* supra, que ni la Ley Orgánica ni nuestro Código de Enjuiciamiento Criminal contienen disposición alguna que requiera como requisito previo para la validez de una acusación, que ésta sea radicada por el Fiscal después de haberse practicado un examen preliminar y librado orden de prisión por un magistrado o juez instructor, y a esto agregamos según fuera resuelto en el caso del *Pueblo* v. *Montes,* 64 D.P.R. 322, que en esta jurisdicción no existe requisito constitucional de que el acusado deba estar represen-

tado por abogado con anterioridad a la lectura de la acusación. Además, en la hipótesis de que nuestras leyes requiriesen para la validez de una acusación que se practicara previamente un examen preliminar, tal derecho del acusado ha quedado renunciado al haber dejado de presentar una moción antes o en el acto del *arraignment* para que se desestime la acusación por no haberse cumplido con tal requisito legal. *Pueblo* v. *Travieso,* supra; *Ex parte McConnell,* 83 Cal. 553 y *People* v. *Rousse,* 23 Cal. App. 100, 146 Pac. 65.

Y, por último, sostiene el apelante como error cometido por la corte, que el veredicto rendido por el jurado y en el cual está basada la sentencia es contrario a derecho y a la prueba: Alega para sostener su aserto que la confesión del acusado no fué debidamente corroborada, que no se probó la comisión de un delito de asesinato en primer grado y que el veredicto es contrario a la prueba.

De un estudio global de la prueba aducida por El Pueblo en este caso llegamos a la conclusión de que, independientemente de la confesión prestada por el acusado, ha quedado establecido indubitablemente el *corpus delicti*, pues se ha probado la muerte ilegal de un ser humano causada por un agente criminal. El corpus delicti, según se dice en Underhill's *Criminal Evidence,* cuarta edición, sec. 37, pág. 45, puede ser probado por evidencia circunstancial de la cual el jurado pueda razonablemente inferir que un crimen ha sido cometido. La prueba del corpus delicti sólo tiene por objeto probar la comisión de un delito, no siendo necesario que de ella surja el grado de dicho delito. Así vemos que en caso de muerte ilegal el corpus delicti se limita a probar que la muerte ha sido el acto de un agente criminal y con la evidencia tendiente a conectar al acusado con la comisión del delito se determina si la muerte constituye asesinato en primero o segundo grado u homicidio voluntario o involuntario, según resulte de la prueba. Véase: *Pueblo* v. *Declet,* 65 D. P.R. 23. Entendemos que la evidencia presentada en este

caso unida a la confesión del acusado ha dejado probado suficientemente todos los elementos de un delito de asesinato en primer grado sin que sea necesario el cumplimiento de ningún otro requisito legal. La confesión no fué la única prueba contra el acusado. Hubo prueba de testigos que vieron al acusado el día del crimen en el sitio donde apareció el cadáver; que las manchas de sangre que tenía la ropa y zapatos del acusado eran del mismo tipo que las del tubo con que se ocasionó la muerte y las del cubreasientos del automóvil en donde estaba acostado el cadáver.

*Por los fundamentos expresados anteriormente somos de opinión que no se ha cometido ninguno de los cuatro errores señalados, por lo que procede confirmar la sentencia apelada.*