FERNANDO RIVERA ESCUTÉ, peticionario, *v.* GERARDO DELGADO, JEFE DE LA PENITENCIARÍA ESTADUAL, demandado.

*Número:* HC-64-26 *Resuelto:* 26 de octubre de 1965

768

*Santos P. Amadeo, Richard Ramos Algarín* y *Guillermo Bird Martínez,* abogados del peticionario; *J. B. Fernández Badillo, Procurador General,* y *Rodolfo Cruz Contreras, Sub-Procurador General,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Una vez más ha quedado abierta a examen esta convicción de asesinato en primer grado. Cuando la confesión del peticionario obtenida durante el interrogatorio a que lo sometió el Ministerio Público mientras estaba detenido bajo custodia policíaca se ofreció en evidencia en su proceso criminal, la defensa se opuso a la admisión, entre otros motivos, porque según expuso la confesión se obtuvo en violación del derecho constitucional del peticionario a tener abogado que lo representara en la investigación o en el examen preliminar al momento en que compareció ante el Fiscal, sin que hubiera renunciado inteligentemente tal derecho constitucional. (R. Cr. Núm. 5355, C.D.S.J., págs. 38, 76.) Al admitir la confesión en evidencia el Juez sentenciador expresó que el acusado no tenía derecho en Puerto Rico a tener un abogado en esa etapa y que la investigación de los fiscales era privada. (Id.

pág. 77.) Esto ocurría en el año 1944. El peticionario fue convicto y sentenciado a reclusión perpetua.

En su apelación ante este Tribunal levantó como error, entre otros, el habérsele privado del derecho constitucional a estar asistido de abogado durante el interrogatorio fiscal. Dispusimos del planteamiento según aparece en *Pueblo* v. *Rivera Escuté*, 66 D.P.R. 216 (1946), págs. 220-221, en gran parte bajo un enfoque más bien procesal de índole estatutario aunque se dijo, siguiendo a *Pueblo* v. *Montes*, 64 D.P.R. 321 (1944) y *Pueblo* v. *Travieso*, 60 D.P.R. 530 (1942), que aquí no existía el requisito constitucional de que el acusado debiera estar representado por abogado con anterioridad a la lectura de la acusación.

Doce años después, en *Rivera Escuté* v. *Delgado*, 80 D.P.R. 830 (1958), hubo la oportunidad de reexaminar la misma situación por hábeas corpus. No obstante la observación de tipo normativa contenida en el escolio 2—pág. 835— apuntamos entonces, hablando al igual que ahora por el Tribunal, que expedíamos el auto convencidos de que la cuestión no fue resuelta en la apelación del caso en los términos constitucionales en que se presentaba en el hábeas corpus, siendo una que, de asistirle la razón al peticionario, podría resultar en la nulidad de los procedimientos y de la sentencia que lo tenía privado de su libertad por falta del debido procedimiento de ley, o posiblemente por ausencia de jurisdicción.—80 D.P.R., a la pág. 835.

Reexaminamos la validez de la convicción del peticionario a base de su derecho a la asistencia de abogado, sobre los siguientes postulados de orden constitucional: (1) si bajo el párrafo segundo del Art. 2 de la Carta Orgánica de 1917 que regía era nulo, por falta de jurisdicción, el proceso en corte del peticionario tramitado en 1944 en el cual disfrutó de la debida asistencia legal, por el hecho de que mientras se investigó el delito y antes de ser traído para la lectura de la acusación él no fue asistido por abogado ni se le advirtió de

ese derecho por autoridad competente; (¹) y (2) si aquella parte de nuestro sistema de enjuiciamiento criminal que permitía al Ministerio Público hacer privadamente la investigación del delito y el interrogatorio del peticionario en donde él hizo una confesión, sin el derecho a tener allí asistencia de abogado, estaba de tal manera en conflicto con aquellos principios fundamentales de libertad y justicia encarnados en las cláusulas del debido procedimiento de ley de las Enmiendas V y XIV de la Constitución Federal, al extremo de que el proceso posterior en corte aun con la debida asistencia legal dejó de constituir un juicio imparcial y justo a la luz de estas garantías constitucionales y el proceso debería anularse. Aclaramos a renglón seguido (escolio 11), que en el juicio de asesinato del peticionario la cuestión había surgido como problema de *admisión* de evidencia; si era admisible su confesión dada en el curso de un interrogatorio en que como se sabía, no tenía abogado; y que aun cuando opináramos que el hecho en sí de no tener abogado cuando prestó la confesión constituía un obstáculo legal para su admisión en evidencia, en aquel recurso de hábeas corpus no podríamos ejercer el poder correctivo de ordenar un nuevo juicio eliminándola, a menos que determináramos que ese hecho *por sí solo* convertía la confesión en una *involuntaria*, en el cual caso sí debería ser imperativo fuera de toda discusión el anular la sentencia condenatoria bajo las cláusulas del debido procedimiento de ley.—80 D.P.R. pág. 845.

Después de un estudio del Art. 44 del Código de Enjuiciamiento Criminal hecho a la luz de su procedencia histórica, y situado dicho Art. 44 en su propia significación a tenor de otros artículos relacionados del Código Penal de California que no adoptamos para regir aquí, y analizado todo el régimen procesal de California pertinente a procedimientos en

---

(¹) "En todos los *procesos criminales* el acusado gozará del derecho a tener para su defensa la ayuda de abogado;" . . . Art. 2, Carta Orgánica de 1917.

etapas iniciales y previas al juicio en los cuales sin duda alguna hubo desde un principio un derecho estatutario a tener asistencia legal consagrado también en la Constitución del Estado, concluimos en ese recurso que no existía entre nosotros el procedimiento de "examen" o "vista preliminar" como el de California allí descrito, y el de muchos otros Estados en donde inequívocamente se garantizaba el derecho a tener asistencia legal en el curso de tal procedimiento.

Expresamos que en tanto la razón filosófica de *Johnson* v. *Zerbst*, 304 U.S. 458 sobre la necesidad de la intervención de abogado fue un derivativo de los pronunciamientos de *Powell* v. *Alabama*, 287 U.S. 45, podía decirse que la raciocinación en el orden filosófico se transfiguró y tomó cuerpo como precepto constitucional en aquel principio del debido procedimiento de ley que requiere ser juzgado y oído antes de ser condenado; y como cosa *consubstancial con el derecho de audiencia*, el que lo fuera por abogado.

Aparte de cualquier criterio sentado a otros efectos sobre el comienzo del *"proceso criminal"*, reafirmamos entonces que bajo el derecho a la ayuda de abogado del Art. 2 de la Carta Orgánica de 1917 interpretado a la luz de la doctrina autorizada definidora de igual derecho bajo la Enmienda VI para los enjuiciados en las cortes federales, [2] el derecho absoluto e incondicional del peticionario a asistencia de abogado surgía ya radicada su acusación, acto, según dijimos, con el cual principiaba el desenvolvimiento jurídico de notificarle y oírle antes de emitirse fallo en definitiva sobre su culpabilidad o inocencia, pág. 850. Concluimos que el proceso del peticionario no careció de jurisdicción por la inexistencia de ayuda legal previa al juicio.

Pasamos de ahí a ahondar en el problema de la confesión del peticionario prestada bajo custodia sin asistencia legal y admitida en su proceso, a la luz de la protección del debido

---

[2] "En todas las *causas criminales* el acusado gozará del derecho . . . a la asistencia de abogado para su defensa." Enmienda VI.

procedimiento de ley del Art. 2 de la Carta Orgánica, que encarnó la protección de la Enmienda V en cuanto a acción federal y de la XIV en cuanto a acción de los distintos Estados.[3] En términos del debido procedimiento seguimos criterios reafirmados en *Crooker* v. *California*, 357 U.S. 433 y en *Cicenia* v. *La Gay*, 357 U.S. 504,—resueltos sólo unos 6 meses antes—al efecto de que *el mero hecho* de que hubiera la detención y el interrogatorio policial en privado de una persona bajo custodia no hacía su confesión una *involuntaria* inadmisible como tal bajo el debido procedimiento, y que la negativa de una petición expresa para consultar abogado en ese momento tampoco constituía un ingrediente de coacción a los efectos del factor de la voluntariedad. Concluimos así bajo el 2º supuesto discutido que nuestro sistema acusatorio de investigación en privado por el Ministerio Público sin la ayuda de abogado en esa etapa investigadora no caía, *per se*, al margen del debido procedimiento de ley.

No obstante las conclusiones expuestas, dejamos dicho también lo siguiente: (pág. 855)

"Vemos, pues, que distinto a como presentamos el problema a la luz del art. 2 de la anterior Carta Orgánica de 1917, y como se ha presentado en las cortes federales a tenor de la Enmienda VI, bajo el debido procedimiento de ley de cualquiera de las Enmiendas V o XIV el derecho a asistencia de abogado no está ineludiblemente restringido al proceso en corte. *Crooker, Cicenia,* supra; *Moore* v. *Michigan,* 351 U.S. 155 (1957), 2 L.ed.2d 167; *Chandler* v. *Fretag,* supra; *Reece* v. *Georgia,* 350 U.S. 85 (1955), 100 L.ed. 77. Pero no existe el derecho absoluto bajo el debido procedimiento a disfrutar de representación o asistencia legal en la etapa investigadora del delito, ni se violaría tampoco la garantía constitucional por la negativa de las autoridades a una solicitud de asesoramiento legal en tales etapas a menos que,

---

[3] "No se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de la vida, libertad o propiedad sin el debido procedimiento de ley," . . . Art. 2 Carta Orgánica 1917. ". . . ni será privado de su vida, de su libertad o de su propiedad sin el debido procedimiento de ley" . . . . Enmienda V Constitución Federal.

considerado el hecho en conjunto con las demás circunstancias y factores presentes, la sentencia condenatoria sea el fruto de toda una situación repulsiva a aquellos principios básicos de libertad y justicia que inspiran un juicio imparcial y justo."

La decisión de *Rivera Escuté* v. *Delgado* respondió a los criterios constitucionales rectores de la materia a la fecha en que fue emitida. (⁴)

La convicción del peticionario ha quedado una vez más abierta a examen, palabras con que comenzamos esta opinión, porque su reexamen nos pareció prudente a la luz de la decisión, 6 años posterior, de *Escobedo* v. *Illinois*, 378 U.S. 478; con mayor razón, ante la existencia incuestionable en el récord del peticionario del cuadro básico de hechos que dan lugar, en *Escobedo,* a la expansión de la garantía constitucional absoluta de asistencia de abogado de la Enmienda VI, garantía ésta que según regía, *Gideon* v. *Wainwright,* 372 U.S. 335, se había encargado ya de hacerla obligatoria para los Estados a través del debido procedimiento de ley de la Enmienda XIV.

Expone *Escobedo*: (pág. 490)

"Sostenemos, por lo tanto, que cuando, como aquí, la investigación ya no es una averiguación general de un crimen sin resolver sino que ha empezado a concentrarse sobre un sospechoso en particular, el sospechoso se ha puesto bajo custodia policíaca, la policía lleva a efecto un curso de interrogatorio que se presta por sí mismo a educir manifestaciones incriminatorias, el sospechoso ha solicitado y se le ha negado la oportunidad de consultar con su abogado, y la policía no le ha advertido de manera eficaz de su derecho absoluto constitucional a permanecer en silencio, al acusado se le ha negado 'la Asistencia de Abogado' en violación de la Enmienda Sexta de la Constitución, según fue hecha obligatoria en los Estados por la Catorce, *Gideon* v. *Wainwright,* 372 U.S. a [la pág.] 342, y que ninguna declaración

(⁴) Confirmada por la Corte de Apelaciones (1st Cir.) bajo *Escuté* v. *Delgado,* 282 F.2d 335.

El Tribunal Supremo de los Estados Unidos se negó a revisar. 365 U.S. 883.

obtenida por la policía durante el interrogatorio puede ser usada contra él en un juicio criminal."

Termina la opinión de *Escobedo* con este pronunciamiento generalizador: (pág. 492)

"Nada de lo que hemos dicho hoy afecta a los poderes de la policía para investigar 'un crimen sin resolver', [cita], acopiando información de testigos y por otras gestiones de investigación apropiadas. Sólo sostenemos que cuando el procedimiento cambia de uno de investigación a uno acusatorio—cuando se concentra en el acusado y el propósito del mismo es sacar una confesión—nuestro sistema adversativo empieza a tener lugar, y, en las circunstancias aquí presentes, al acusado se le debe permitir consultar con su abogado."

La decisión de *Escobedo* extiende el derecho absoluto de asistencia de abogado de la Enmienda VI a la etapa de investigación del delito, en las circunstancias de hecho que la decisión describe. Esta amplificación del derecho absoluto de la Enmienda VI *Escobedo* también la hace extensiva a los Estados a través de *Gideon* y del debido procedimiento de ley de la Enmienda XIV.

No rige ya en Puerto Rico el Art. 2 de la Carta Orgánica de 1917 contentivo de la garantía de la ayuda de abogado en los procesos criminales y de la garantía del debido procedimiento. Es un hecho histórico que la Constitución Federal, aun bajo los regímenes anteriores de poderes delegados, no ha regido aquí por su propia fuerza y vigor, ni sus disposiciones, con cierta anotada excepción,[5] se hicieron extensivas por acción Congresional para regir aquí directamente. *R.C.A.* v. *Gobierno de la Capital*, 91 D.P.R. 416 (1964), y casos ahí recopilados.

La Constitución del Estado Libre Asociado de Puerto Rico garantiza a sus habitantes el derecho a tener asistencia de abogado "en todos los procesos criminales" Art. II, Sec. 11, y garantiza también a sus habitantes el derecho a no ser

---

[5] Ley Núm. 362 de 1947. 61 Stat. 772.

privados de su libertad o propiedad "sin el debido proceso de ley." Art. II, Sec. 7.

Según expusimos en el caso de *R.C.A.* citado:

"(4) Al aceptar y serle satisfactoria la Carta de Derechos de la Constitución, el Congreso habría de presumir—y en efecto así es y deberá ser—que los poderes públicos y los tribunales del Estado Libre Asociado harán efectivas, e interpretarán las disposiciones de esa Carta de Derechos de manera compatible con la protección que ofrecen a esas libertades básicas y garantías personales iguales o similares disposiciones de la Constitución de los Estados Unidos, y no en menor grado de protección, según éstas son o sean interpretadas y aplicadas por el Tribunal Supremo de los Estados Unidos, tanto por el hecho de que somos una comunidad que ostenta la ciudadanía de los Estados Unidos, como también porque el propio pueblo puertorriqueño hizo expresión de lealtad a los postulados de la Constitución de los Estados Unidos en el Preámbulo de la Constitución que adoptara, como uno de los factores determinantes de su vida de pueblo. (6)

■ Así, pues, aunque no rija aquí por sí misma la Enmienda VI, ni seamos uno de los cincuenta Estados de la Unión, por razón de lo expuesto debe tener pleno vigor en el Estado Libre Asociado de Puerto Rico la protección de mayor alcance sobre el derecho a asistencia legal que ofrece *Escobedo* v. *Illinois*.

En consecuencia, no deben ya prevalecer pronunciamientos como los expresados en *Rivera Escuté* v. *Delgado*, y en casos anteriores y posteriores con el efecto de que el derecho absoluto a la asistencia de abogado en los procesos criminales, según ahora está aquí garantizado por nuestra Constitución y allá por la Enmienda VI y a través de la XIV, no se extiende de ningún modo como cuestión de ley, ni en circunstancia alguna, a etapas en la persecución del delito ante-

---

(6) En relación con lo antes transcrito observamos al calce (escolio 4) que nuestras decisiones finales son revisadas por el Tribunal Supremo de los Estados Unidos en la extensión en que revisa las decisiones de los Estados. Ley Núm. 87–189, 1961, 75 Stat. 417; 28 U.S.C.A. sec. 1258; Regla 62 de dicho Tribunal Supremo de mayo 30, 1963.

riores al proceso, y como punto de partida fijo, a etapas anteriores a la radicación en un tribunal de la acusación, como así lo teníamos decretado. En sus circunstancias de hecho y a los efectos de la asistencia de abogado, Escobedo sitúa el *"proceso criminal"* de las garantías constitucionales también en el cuartel de la policía. Ya en *Soto Ramos* v. *Supert. Granja Penal*, 90 D.P.R. 731 (1964), cuatro días después de haberse resuelto aquel caso en 22 de junio, invitamos de paso la atención de las autoridades investigadoras y del Ministerio Público hacia el nuevo criterio constitucional de dicha decisión.

■ De acuerdo con los pronunciamientos de *Escobedo* v. *Illinois* según los expone el Juez Goldberg, que son la razón de ser de las conclusiones del Tribunal anteriormente transcritas, y de acuerdo con aquel criterio judicial que aceptamos como una autorizada y correcta interpretación de ese fallo y de su significado y alcance, decimos ahora que no son admisibles en evidencia en el "proceso criminal" la confesión de un acusado o sospechoso o las admisiones que le perjudiquen sustancialmente, obtenidas de él bajo custodia de la policía u otra autoridad competente mientras se le interroga con el fin de obtener manifestaciones incriminatorias: (1) cuando no fue advertido de manera eficaz por la policía u otra autoridad competente antes de declarar, de su derecho constitucional absoluto a permanecer en silencio y a no incriminarse; y (2) cuando no fue advertido por la policía u otra autoridad competente antes de declarar, de su derecho a tener ayuda de abogado, sin que el hecho de no haber sido solicitada afirmativamente por el acusado releve de la obligación de advertirle su derecho a tenerla; o (3) cuando solicitó consultar con abogado y no se le permitió el estar así asistido al obtenerse su declaración. (⁷)

---

(⁷) Expresa el Juez Goldberg entre otras consideraciones generales: (378 U.S. 484) "En *Massiah* v. *United States*, 377 U.S. 201, esta Corte observó que 'Una Constitución que garantiza a un procesado la ayuda de

Además de los pronunciamientos en *Escobedo*, véanse: *People* v. *Dorado*, la ilustrativa y documentada opinión del Juez Tobriner hablando por la Corte Suprema de California,

abogado en . . . juicio seguramente no podría concederle menos a uno ya acusado bajo interrogación de la policía en un procedimiento completamente extrajudicial. . . . Cualquier cosa menos que eso . . . le negaría a un procesado "representación efectiva por abogado en la única etapa en que la asistencia y consejo legal le ayudaría." ' [cita]." Expresó ante los hechos del caso, que no debía haber diferencia por el hecho de que el interrogatorio se efectuara antes de ser la persona formalmente acusada. . . . Lo que pasara en el interrogatorio podía ciertamente afectar todo el juicio (cita) ya que los derechos pueden quedar irreparablemente perdidos si allí y en ese momento no se aseguran, como quedan cuando un acusado representado por abogado renuncia un derecho por razones de estrategia. Sería exaltar la forma sobre la esencia el hacer depender el derecho a abogado, en estas circunstancias, de que al tiempo del interrogatorio las autoridades hubieran obtenido una acusación formal (pág. 486). . . . Refiriéndose al caso de *People* v. *Donovan*, 193 N.E.2d 628 (N.Y.), dice que la Corte apuntó allí que sería una gran incongruencia el que nuestro sistema de justicia permitiera al Fiscal, abogado del Estado, extraer una confesión al acusado mientras que a su propio abogado, que trata de hablarle, la policía lo mantiene alejado de él . . . el "derecho a usar abogado en el juicio formal sería una cosa bastante vacua si, a todos los efectos prácticos, la convicción ya está asegurada por el interrogatorio que precedió al juicio," citando del Juez Black en *In re Groban*, 352 U.S. 330. De *Ex parte Sullivan*, 107 F.Supp. 514, cita: "Uno podría imaginarse a un fiscal cínico diciendo: 'Permitánles que tengan el abogado más ilustre, ahora. No pueden escapar el lazo. Nada hay que el abogado pueda hacer por ellos en el juicio.' " (pág. 488)

Observa el Juez Goldberg que el hecho de que muchas confesiones se obtienen en este período resalta la naturaleza peligrosa del mismo como una "etapa en que de seguro se necesita la ayuda y consejo legal," . . . . El derecho a abogado sería de cierto vacuo si comenzara en una etapa en que se obtienen pocas confesiones, y anota que existe necesariamente una relación directa entre la importancia de una etapa para la policía en su búsqueda por una confesión y la amenaza de esa etapa para el acusado en su necesidad de consejo legal. Y añade: "Nuestra Constitución, distinta a otras, tira la balanza en favor del derecho del acusado a tener consejo legal sobre su privilegio a no incriminarse a si mismo". . . . Termina el Juez Goldberg antes de hacer sus conclusiones diciendo que la historia ha enseñado que no puede, o no debe, sobrevivir un sistema de justicia criminal si viene a depender, para su continuada eficacia, de la abdicación del ciudadano por inconsciencia de sus derechos constitucionales. Ningún sistema que valga la pena conservar debe temer el que si se le permite al acusado consultar con abogado, él va a ser consciente de esos derechos y los ejercitará (pág. 490).

enero 29, 1965, 42 Cal. Reptr. 169, 398 P.2d 361, una convincente aplicación de *Escobedo* v. *Illinois* que impone a la policía u otra autoridad la obligación de advertirle a un sospechoso bajo custodia que está siendo interrogado con miras a que confiese o se incrimine, de su derecho a tener allí asistencia de abogado aun cuando no hubiera solicitado dicha asistencia, decisión ésta que el Tribunal Supremo se negó a revisar, 381 U.S. 937, 946; *State* v. *Neely,* enero 27, 1965, 398 P.2d 482, en que habiéndose hecho por las autoridades la advertencia del derecho a no incriminarse y a permanecer en silencio—como pasó en el caso del aquí peticionario—la Corte Suprema de Oregón declaró inadmisible la confesión a la luz de *Escobedo* porque no se le hizo también la advertencia de su derecho a tener allí asistencia de abogado, debiendo coexistir ambas advertencias. Lógico que así sea por cuanto la ayuda u orientación legal viene a ser necesaria precisamente para que el sospechoso entienda la advertencia sobre incriminación y sus consecuencias y renuncie o no su derecho conscientemente. En igual sentido, *State* v. *Adams,* (Ore.) mayo 1965, 400 P.2d 556; y la Corte Suprema de Rhode Island en *State* v. *Dufour,* enero 1965, 206 A.2d 82, 85, y en *State* v. *Mendes,* mayo 1965, 210 A.2d 50, en que se discute la renuncia del derecho; *People* v. *Schader,* mayo 11, 1965, 44 Cal. Reptr. 193, 401 P.2d 665; *People* v. *Steward,* 400 P.2d 97, en donde la Corte Suprema de California discute y define el concepto de "un interrogatorio que se presta a obtener manifestaciones incriminatorias del sospechoso" y señala en qué momento la investigación deja de ser una de tipo general; *People* v. *Anderson,* 394 P.2d 945. Y véanse en igual sentido que *Dorado*: *Otney* v. *United States,* 340 F.2d 696 (10th Cir.), págs. 701–702; *Queen* v. *United States,* 335 F.2d 297 (D.C. Cir.); *Johnson* v. *United States,* 344 F.2d 163, 165; *United States* v. *State of New Jersey,* 351 F.2d 429 (3rd Cir.), res. mayo 5, 1965; *Commonwealth* v. *Negri,* 198 A.2d 595 (Pa.), res. marzo 17, 1964. Cf. *Rainsberger* v. *State,* 399 P.2d 129

(Nev.), en que luego hubo una declaración de culpabilidad en el juicio con la debida asistencia legal, usándose la confesión sólo para determinar el grado del delito y la pena; y cf. *Vorhauer* v. *State*, 212 A.2d 886 (Del.), julio 27, 1965.

En *Jackson* v. *United States*, 337 F.2d 136 (D.C. Cir.), *cert. denegado*, 380 U.S. 935, se sostuvo la admisión de una confesión por demás voluntaria hecha sin asistencia de abogado. La Corte de Apelaciones señala con énfasis el hecho de que en tres distintas ocasiones con anterioridad a declarar, a saber: en el momento mismo en que fue arrestado por un agente federal de investigaciones, luego por el Comisionado de los Estados Unidos al ser llevado ante éste, y una tercera vez por la policía del Distrito de Columbia, al acusado se le advirtieron ambos derechos, a no incriminarse y a tener asistencia de abogado, antes de que hiciera su confesión. Aun así, no dejan de impresionar los razonamientos del Juez Fahy en su elaborada opinión disidente. En parecido sentido, *Payne* v. *United States*, 340 F.2d 748 (9th Cir.). En *Davis* v. *North Carolina*, 339 F.2d 770 (4th Cir.), un hábeas corpus federal contra una convicción estatal, la Corte de Apelaciones señala que los hechos son distintos de los de *Escobedo*. No obstante, véase la fuerte y razonada disidencia de los Jueces Sobeloff y Bell, págs. 780–782. Compárese la situación en *People* v. *Gunner*, 205 N.E.2d 852 (N.Y.), marzo 11, 1965.

En las circunstancias anteriormente señaladas, o sea cuando la investigación toma el cariz de acusatoria y se posa sobre un sospechoso en particular con miras a sacarle una confesión, indica el caso de *Escobedo* que el proceso adversativo cobra realidad. De que sea ya *adversativo* surge la obligación de la policía u otra autoridad competente de advertirle de su derecho constitucional a permanecer en silencio y no incriminarse, y de su derecho constitucional a tener allí y entonces asistencia de abogado y el permitirle que la tenga.

Se han expuesto criterios con el efecto de que el derecho que garantiza *Escobedo* no tiene aplicación en otros

casos si no se reproduce en forma idéntica la circunstancia de que el acusado había contratado abogado y se le negó consultarlo. Cf. *People* v. *Gunner*, ante, (escolio 4) infra. Esa circunstancia se expone así porque los hechos en *Escobedo* fueron así, pero nos parece claro que los pronunciamientos de la opinión, que son la base doctrinal del derecho que garantiza, trascienden más allá de la circunstancia. El Juez Tobriner expone la situación con claridad cuando dice en *Dorado* que el derecho a abogado ha surgido ya en esta etapa crítica acusatoria; el derecho no se origina con el aserto que el acusado haga del mismo, y más adelante al expresar que *Escobedo* no consideró la petición de abogado como el fundamento para establecer el derecho, sino que determinó que el derecho se había cristalizado ya con la etapa acusatoria. Cualquier duda sobre este enfoque quedaría disipada por las expresiones del Juez White en su disenso en el propio caso de *Escobedo* al cual se unieron los Jueces Clark y Steward, 378 U.S. a las págs. 495, 496, y por *Carnley* v. *Cochran*, 369 U.S. 506. En *Carnley* dijo el Tribunal Supremo por analogía que era cosa resuelta que cuando la ayuda de abogado es un requisito constitucional, el derecho a que se proporcione abogado no depende de una petición. La petición de abogado es un formalismo sobre el cual el derecho del acusado no se puede hacer depender. . . . "Sostuvimos que cuando la Constitución concede protección contra procedimientos criminales sin asistencia de abogado, la asistencia legal debe proporcionarse, hubiere o no el acusado pedido el nombramiento de abogado." *Massiah* v. *United States*, 377 U.S. 201. (⁸)

(⁸) Somos conscientes de que hay discrepancia de criterio con otras cortes en cuanto a la aplicación de *Escobedo* v. *Illinois* y su alcance. Cf. *People* v. *Hartgraves*, 202 N.E.2d 33, en que Illinois dice (pág. 36) brevemente que no "leen" el caso de *Escobedo* como que requiere el rechazo de una confesión voluntaria (después del arresto y bajo custodia de la policía) porque el Estado no advirtiera al acusado su derecho a asistencia legal y a no incriminarse, apuntando que del récord no aparecía que el acusado hubiera pedido asistencia de abogado. Y cf. *United States* v. *Childress*, 347 F.2d 488 (7th Cir.); *Kennedy* v. *United States*, 330 F.2d 26

■ No resolvemos que toda admisión o confesión de otro modo voluntaria y admisible deba ser excluida, sin diferenciación alguna, porque no se hizo con la asistencia de abogado. Cada caso deberá resolverse por sus propios hechos y circunstancias. Anticipamos ya, en *Soto Ramos* v. *Supert. Granja Penal*, antes citado, que "La decisión de *Escobedo*, dada a la luz de los hechos y circunstancias de ese caso, no nos obliga constitucionalmente a revocar a *Rivera Escuté bajo el criterio general de que toda confesión que se hubiere obtenido extrajudicialmente sin asistencia de abogado anula el proceso en que se utilizó*, [énfasis ahora] independientemente de las circunstancias en que fue obtenida o se hizo dicha confesión."

■ Resolvemos que al sospechoso detenido en una etapa ya acusatoria deben advertírsele esos derechos antes de extraérsele una confesión o admisiones que sustancialmente lo incriminen; y en ausencia de esas advertencias, y de permitirle tener la asistencia de abogado si la desea por razón de su derecho constitucional la confesión es inadmisible en su proceso. La decisión de *Escobedo* v. *Illinois* reconoce que en esas etapas previas al juicio el sospechoso o acusado puede renunciar inteligente y conscientemente esos derechos al igual que en el juicio. En este sentido cada caso se decidirá también por sus propios hechos y circunstancias como en toda otra renuncia de derechos fundamentales, pero incuestionablemente, la ausencia de ayuda y consejo legal para una renuncia consciente e inteligente de ese consejo y ayuda será

(D.C. Cir.), sept. 9, 1965; *Cephus* v. *United States*, 324 F.2d 893 (D.C. Cir.), junio 25, 1965.

Véase la posición de New Jersey en *State* v. *Blanchard*, 207 A.2d 681, y la situación en *People* v. *Gunner*, ante. Cualquiera que sea el valor de esos criterios, a la luz de los propios pronunciamientos de *Escobedo*, de *Massiah* y de *Carnley* ante, y casos citados en ellos, esas posiciones no nos son tan persuasivas como la de aquellos tribunales que preferimos seguir, máxime ante la Regla 4 de Procedimiento Criminal de 1963, y las Reglas 6(b) y 22(a) y (b).

a la vez factor de mayor importancia en la determinación de la propiedad de la renuncia misma. (⁹)

El récord del aquí peticionario demuestra que hacía algún tiempo él estaba arrestado bajo custodia de la policía; que se le sometió por la policía a interrogatorios que produjeron confesiones, siendo la tomada por escrito por el Fiscal Aponte la cuarta confesión de su participación en el delito, se le advirtió por el Fiscal del derecho a no incriminarse en la forma usual y corriente, no tuvo allí asistencia de abogado; la investigación ya había caído en la etapa claramente acusatoria y en todo momento el Fiscal lo trató como un acusado.

Esos hechos en el récord nos obligan a entrar en la consideración de un segundo aspecto del caso: si la regla de exclusión de *Escobedo* ha de extenderse, por vía de ataque colateral como el presente recurso, a la sentencia condenatoria del peticionario que era ya final y firme antes de emitirse esa decisión el 22 de junio de 1964. De otra manera: si el pronunciamiento constitucional de *Escobedo* v. *Illinois* surte efecto en retrospección. (¹⁰) La decisión depende de variados factores a evaluarse.

█ De acuerdo con el criterio doctrinal examinado y a la luz de los pronunciamientos del más reciente caso de *Linkletter* v. *Walker*, 381 U.S. 618, res. junio 7, 1965, resolvemos que la regla enunciada en *Escobedo* que en determinadas circunstancias excluye la confesión—en razón de la garantía constitucional del derecho a abogado que expande—no tiene

---

(⁹) En las circunstancias del presente, en que *Escobedo* ha trasladado el derecho constitucional a asistencia de abogado a etapas anteriores a la acusación formal en corte y al cuartel de la policía mismo, deben surgir mecanismos viables de modo que el ejercicio del derecho constitucional quede garantizado sin que se incapacite la función perseguidora del delito, particularmente en el caso del sospechoso o acusado indigente y sin recursos para contratar servicios legales que quiere ejercitar su derecho constitucional a tener la ayuda de abogado en estas etapas previas a su proceso criminal.

(¹⁰) Los casos citados antes envuelven ataques directos a las sentencias mediante apelación o revisión de casos no terminados al decidirse *Escobedo*.

aplicación retroactiva por vía de la anulación del proceso o la concesión de un nuevo juicio a casos del pasado finalmente decididos ya al anunciarse dicha regla excluidora de evidencia.

■ *Linkletter* v. *Walker*, como este recurso, es un ataque indirecto por hábeas corpus que pone punto final al problema de la aplicación retroactiva o no de *Mapp* v. *Ohio*, 367 U.S. 643, cuestión esa que tenía hondamente dividido el pensamiento jurídico en los Estados Unidos. (¹¹) En *Mapp* v. *Ohio* se resolvió, revocándose una norma sentada en *Wolf* v. *Colorado*, 338 U.S. 25, que la cláusula del debido procedimiento de ley de la Enmienda XIV sí obligaba a los *Estados* a excluir del juicio evidencia obtenida en violación de la garantía de la Cuarta Enmienda contra registros ilegales. *Linkletter* decide ahora que esa regla de exclusión de *Mapp* evidencia ilegalmente obtenida en violación de la Enmienda IV no se aplica retroactivamente a fallos estatales finales ya a la fecha en que se emitió esa decisión y explica, escolio 5, 381 U.S. pág. 622 y a la pág. 639 qué se entiende por final. (¹²)

■ Como guía de orientación general sobre el problema de la retroactividad, *Linkletter* se aparta de la vieja doctrina identificada con *Blackstone* en el sentido de que una posterior decisión no establece la ley, sino que descubre o declara la ley como siempre en verdad ha sido. Después de analizar varios precedentes en que se traen palabras del Juez Hughes en *Chicot County* v. *Baxter*, 308 U.S. 371 al efecto de que la existencia real de la ley antes de la determinación de inconstitucionalidad es un hecho operativo que puede tener consecuencias que no deben ser justamente ignoradas, y que el pasado no siempre puede borrarse por una nueva declaración judicial, anota el Juez Clark que (1) un cambio en la ley

---

(¹¹) Véase *Linkletter,* escolio 2. Dice el Juez Sr. Clark . . . "y expedimos *certiorari* con el fin de decidir lo que ha venido a ser un bastante gravoso problema en la administración de justicia."

(¹²) Casos en que se ha dictado sentencia condenatoria, la disponibilidad de una apelación se ha agotado y el término para solicitar *certiorari* estaba ya vencido a la fecha en que se resolvió *Mapp*.

784

tiene eficacia mientras el caso está en revisión directa y (2) que la eficacia de la decisión posterior de invalidez sobre fallos anteriores finales cuando son atacados colateralmente no está sujeta a normas establecidas de absoluta invalidez retroactiva, sino que depende de la consideración de determinadas relaciones, . . . y determinada conducta . . . "y de la política pública a la luz de la naturaleza tanto del estatuto como de su aplicación anterior." (pág. 627.)

Más adelante expone que la norma hoy en día aceptada es que en casos apropiados la Corte puede, en interés de la justicia, hacer la decisión prospectiva . . . y que no parece que haya impedimento—constitucional o filosófico—para el uso de esa norma en la esfera constitucional cuando la situación exige que dicha norma se aplique, y declara que *la Constitución ni prohibe ni requiere* la aplicación retrospectiva. Una vez aceptado el supuesto que no estamos obligados a, ni impedidos de aplicar una decisión retrospectivamente, observa el Juez Clark, debemos pesar los merecimientos y desmerecimientos en cada caso examinando el historial anterior de la norma en cuestión, su propósito y eficacia, y si la aplicación retrospectiva habría de fomentar o retardar su funcionamiento.

Con miras a esas consideraciones generales y a lo ocurrido con posterioridad a *Wolf* v. *Colorado*, (1949) y casos que le siguieron, surge que la regla de exclusión de *Mapp* respondió al fracaso desde *Wolf*, ya reconocido, en hacer respetar la Enmienda IV a través de otros métodos y remedios que demostraron ser inútiles para contener la incidencia de ilegalidad policíaca.([13]) Se decretó la exclusión como el único disuasivo

---

([13]) *Wolf* dispuso que la garantía de la Enmienda IV contra registros ilegales era obligatoria a los Estados a través del debido procedimiento de la XIV, pero el Tribunal Supremo no impuso entonces a los Estados la regla de exclusión de la evidencia ilegalmente obtenida en violación de esta Enmienda. En *Mapp*, se las impuso.

Se citan *Lustig* v. *United States*, 338 U.S. 74; *Stefanelli* v. *Minard*, 342 U.S. 117; *Irvine* v. *California*, 347 U.S. 128; *Rea* v. *United States*, 350 U.S. 214; *Elkins* v. *United States*, 364 U.S. 206. Y cf. *Rochin* v. *California*, 342 U.S. 165.

eficaz de esa acción policíaca ilegal. Pero se resuelve en *Mapp* que tal propósito en nada se adelantaría con una aplicación retroactiva de la regla de exclusión. En adición, se observa, hay intereses en la administración de justicia y en la integridad del procedimiento judicial a considerarse. Se distinguen las situaciones en que el Tribunal ha dado un remedio retroactivamente como aquellas que afectan directamente el hecho de la culpabilidad; en que está envuelva la imparcialidad del juicio, la integridad misma del proceso de adjudicación de los hechos de esa culpabilidad; las confesiones involuntarias, éstas, debido a un "complejo de valores" en que puede estar la posibilidad de que la confesión sea incierta, y el quebrantamiento de la voluntad individual, y porque la sociedad aborrece el uso de confesiones coaccionadas. [14]

Resuelve *Linkletter* que aunque el error ahí cometido de no excluir la evidencia fuera fundamental (la Corte de Apelaciones determinó que había sido ilegalmente obtenida), el error no participa de aquella naturaleza que requiera echar abajo todas las convicciones ya finales en que se hubiere cometido.

Antes de *Linkletter* v. *Walker*, el mismo día que resolvió *People* v. *Dorado*, enero 29, 1965, la Corte Suprema de California, unánime en este aspecto, decidió en un ataque colateral, *In re López*, 42 Cal. Reptr. 188, 398 P.2d 380, que *Escobedo* v. *Illinois* no es de aplicación retroactiva. La ampliamente documentada opinión, también del Juez Tobriner, ofrece un convincente y exhaustivo estudio sobre la cuestión de retroactividad aquí envuelta. Dice la Corte: "[c]reemos que en *Escobedo* la Corte Suprema de los Estados Unidos primordialmente quiso evitar tácticas policíacas que en el pasado han producido en evidencia confesiones involuntarias. La Corte ha concluido que la presencia de abogado iría lejos en

---

[14] Se citan *Blackburn* v. *Alabama*, 361 U.S. 199; *Brown* v. *Mississippi*, 297 U.S. 278; *Jackson* v. *Denno*, 378 U.S. 368; *Gideon* v. *Wainwright*, 372 U.S. 335; *Griffin* v. *Illinois*, 351 U.S. 12; *Eskridge* v. *Washington, etc.*, 357 U.S. 214.

la erradicación de tales tácticas . . . . La regla proyectó la prevención prospectiva de prácticas coactivas, no la extirpación de tales prácticas cometidas en el pasado." (15) (42 Cal. Reptr. 383) Más adelante: "La determinación de la Corte en *Escobedo* de esterilizar la antecámara policíaca contra el uso de tácticas coactivas fue el resultado, indudablemente, de la constatación de lo inadecuado de los métodos presentes para manejar las confesiones involuntarias. El mero rechazo en evidencia de esas confesiones no ha evitado excesos de la policía. Los estudios han demostrado que las tácticas dudosas para obtener confesiones o admisiones continúan sobre una base general. La misma dificultad de averiguar la coerción que puede ocurrir durante un interrogatorio policíaco, y la vaguedad de las normas aplicables para su determinación, han sido factores adversos que han necesitado un nuevo enfoque. Así, la Corte, en *Escobedo* quiso la corrección de las *condiciones* que instan las confesiones coaccionadas y sus males. Pero la nueva regla no necesita proyectarse hacia atrás para erradicar un ambiente ya sepultado."

Dice *In re López* que la regla de exclusión de *Escobedo* no surgió de una inherente falta de veracidad de las confesiones introducidas en los juicios del pasado o de la incertidumbre en cuanto a la culpabilidad de aquellos que confesaron. Surgió de la creencia de que un interrogatorio en secreto es fuente de coacción, que la oportunidad de la presencia de abogado terminaría el secreto y que la exclusión de la confesión obtenida sin esa oportunidad disuadiría de tales prácticas . . . . Que la Corte no trató de deshacer los procedimientos del ayer que, a pesar de indeseables, no causaron *necesariamente* la convicción del inocente. Una nueva interpretación constitucional debe aplicarse retroactivamente sólo en aquellas situaciones en que la nueva regla protege

---

(15) Véase al Juez White disintiendo en *Escobedo*, 378 U.S. a la pág. 498, *in fine*.

al acusado inocente contra la posibilidad de ser convicto de un crimen que no cometió.

 La Corte también rechaza la idea clásica de que toda interpretación constitucional es una verdad eterna que se proyecta hacia atrás y hacia adelante hasta el infinito y concluye *In re López* que ya que la justificación para la exigencia del derecho a abogado en la etapa acusatoria reside en el propósito de mejorar en adelante el sistema en general de administración de justicia cegando la fuente de coacción, no se serviría propósito alguno con aplicar a *Escobedo* en retrospección. Véanse en igual sentido: *In re Lessard*, 399 P.2d 39, 49; *In re Shipps*, 399 P.2d 571, 573; *People* v. *Furber*, 43 Cal. Reptr. 71 y *People* v. *White*, 43 Cal. Reptr. 905 en que se aplican en toda su extensión las decisiones de *Dorado* y *Escobedo* a convicciones y sentencias condenatorias anteriores pero aún no finales, al emitirse este último fallo; *State* v. *Johnson*, 206 A.2d 737 (N.J.) 1964, págs. 740 y ss., otra comprensiva exposición del problema de retroactividad de *Escobedo* v. *Illinois*. La Corte, después de referirse a decisiones constitucionales que requieren aplicación retro-activa, expone como norma:

"Cuando la veracidad del proceso determinante de culpabili-dad queda seriamente impugnada, hay una buena razón para aplicar la nueva regla de ley a un caso ya decidido. Repugnaría nuestro sentido de justicia el seguir encarcelando a un convicto cuando consideraciones posteriores arrojan serias dudas sobre la verdad de la determinación de su culpabilidad. Pero cuando la convicción se obtuvo como resultado de un procedimiento que en ese momento no se consideraba fundamentalmente injusto, y decisiones judiciales posteriores no arrojen dudas sustanciales sobre la veracidad de la adjudicación ya hecha, no hay razones constrictivas para alterar una decisión que ya no está sujeta a una apelación directa. Al tiempo del proceso del acusado la vo-luntariedad de la confesión era el criterio para su admisión en evidencia. [cita] Más, para fortalecer la certeza de una confesión voluntaria, se requería evidencia corroborante independiente para sostener la convicción. [cita] Estos dos requisitos aun

aseguran que el hecho de la culpabilidad se determinó de manera confiable." Pág. 744.

La Corte de Apelaciones del 7° Circuito se ha negado también a aplicar retroactivamente la decisión de *Escobedo* a una convicción ya final al resolverse este caso, en *Walden* v. *Pate*, (ataque colateral) 350 F.2d 240, decisión de 27 de julio de 1965; y *Commonwealth* v. *Negri*, (Pa.) ante, marzo 17, 1964. Por parecidas consideraciones se ha negado aplicación retroactiva a *Griffin* v. *California*, 380 U.S. 609, en el caso de *In re Gaines*, (Cal.) 404 P.2d 473, decisión de 20 de agosto de 1965. Cf. la exposición en *State* v. *Smith*, 202 A.2d 669, 675 (N.J.), y en *United States* v. *Fay*, 333 F.2d 12 (2d Cir.), págs. 15 y ss., evidencia ilegal bajo la Enmienda IV.

El Fiscal no venía obligado en 1943 a advertirle al peticionario del derecho a tener asistencia legal cuando lo interrogaba y le tomó su confesión, ya que tal no era la norma de ley ni constitucional ni estatutaria. La ley era en contrario. Ante planteamientos de coacción física, confirmamos en la apelación del peticionario, 66 D.P.R. 216, la determinación de la Sala sentenciadora de que aquella confesión fue voluntaria. Sostuvimos también, a tenor del récord, que el peticionario había comprendido la advertencia de no incriminarse, ante su alegada baja inteligencia.

Posteriormente en el hábeas corpus, 80 D.P.R. 830, en donde no se suscitó el punto de la coacción ni se aportó prueba de ello independientemente de la del récord en apelación, reafirmamos aquellos criterios enjuiciados esta vez bajo la ausencia de abogado y ante la norma allí expuesta, que aún tiene valor, al efecto de que la falta de abogado en esa etapa previa podría en determinada circunstancia viciar el proceso posterior en corte y negar un juicio justo e imparcial.

Convencidos como estamos que la ausencia de asistencia legal cuando el peticionario dio su confesión según era la ley entonces no afectó el hecho en sí de la culpabilidad o inocencia del peticionario por cuanto sostuvimos la voluntariedad

de la confesión, no hay base, bajo los principios arriba enunciados, para anular colateralmente su convicción y aplicarle retroactivamente la norma constitucional que hoy adoptamos para la administración de nuestra justicia criminal, siguiendo el pronunciamiento de *Escobedo* v. *Illinois.*

*Se declarará sin lugar el recurso de hábeas corpus.*

El Juez Asociado Señor Blanco Lugo concurre en el resultado en opinión separada. El Juez Asociado Señor Rigau, conforme con la opinión, se une también al voto concurrente del Juez Asociado Señor Blanco Lugo. El Juez Asociado Señor Ramírez Bages está conforme con la salvedad expresada por el Juez Asociado Señor Blanco Lugo en su opinión concurrente, a la cual también se une. El Juez Presidente Señor Negrón Fernández no intervino.

—O—

Opinión concurrente del Juez Asociado Señor Blanco Lugo, en la cual concurren los Jueces Asociados Señores Rigau y Ramírez Bages.

San Juan, Puerto Rico, a 26 de octubre de 1965

Concurro con el resultado anunciado en la opinión del Tribunal (a) en la adopción de la norma de administración de nuestra justicia criminal para hacer más efectivo el derecho a asistencia legal consagrado en el Art. II, Sec. 11 de nuestra Constitución, y, (b) en la aplicación de dicha norma dependiendo de si se trata de un ataque directo o colateral a la sentencia condenatoria recaída.

Ahora bien, deseo fijar claramente mi posición al efecto de que llego a este resultado *exclusivamente* tomando en consideración *únicamente* la cláusula de la Constitución del Estado Libre Asociado de Puerto Rico en su Art. II, Sec. 7, que garantiza a los ciudadanos el derecho a no ser privados de su libertad sin el debido proceso de ley. Las interpretaciones del Tribunal Supremo federal sobre dicha garantía concebida

en idénticos términos en la Enmienda Quinta—para salvaguardar de acción federal—y en la Décimocuarta—para prevenir en cuanto acción de los estados—tiene una gran fuerza persuasiva en aquellas situaciones en que el problema que se trata de conjurar envuelva elementos similares. No obstante, no todas las expresiones de dicho tribunal tienen que ser invariablemente seguidas por nosotros, independientemente de los hechos y circunstancias que les hayan dado margen. Basta un ejemplo. En el ámbito de los derechos civiles la federación americana se confronta con problemas que son desconocidos en nuestro medio y las soluciones que allí se impongan en la protección de los derechos de los ciudadanos no tienen que incorporarse necesariamente aquí, sin un examen cuidadoso de la conveniencia de su adopción a la luz de las particulares condiciones económicas, sociales y políticas de Puerto Rico. Afirmo que es el Tribunal Supremo de Puerto Rico el llamado a darle contenido a las cláusulas de nuestra Constitución y a formular el Derecho, por vía de la interpretación judicial, que ha de regir esta sociedad.[1]

Ante la situación que confrontamos ahora, estimo no puede decirse que se empleen en Puerto Rico las tácticas coactivas para la obtención de confesiones en los cuarteles de la policía en el grado y extensión que justificaron al Tribunal Supremo federal a adoptar la regla de exclusión que culmina con la opinión emitida en el caso de *Escobedo*. Pero independientemente de estas consideraciones, suscribo la norma anunciada porque estimo que fundamentalmente es sana y conveniente en nuestra comunidad, y que no envuelve obstáculos insuperables en la persecución del crimen, no obstante los limitados medios de investigación con que cuenta el Ministerio Público.

---

[1] Es preciso resaltar que en el área de asistencia legal este Tribunal se anticipó por muchos años a *Gideon* v. *Wainwright*, 372 U.S. 335. Véase, apéndice a la opinión emitida en *Pueblo* v. *Mojica Pedroza*, 92 D.P.R. 733 (1965).