EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HONORIO ADORNO LORENZANA, acusado y apelante.

*Números:* CR-65-150      *Resueltos:* 15 de diciembre de 1966
CR-65-151

Honorio Adorno Lorenzana, *pro se. José Rafael Gelpí* y *Stanley L. Feldstein,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita Vientós Gastón, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante, Honorio Adorno Lorenzana, fue convicto por un jurado de asesinato en segundo grado y de una violación a la Ley de Armas. Los hechos pueden resumirse como sigue.

La víctima, Rafael Pérez Balzac, era Ayudante del Decano de Administración de la Universidad de Puerto Rico. En el desempeño de sus deberes Pérez Balzac era jefe del apelante. El apelante había sido guardia universitario y a la fecha de los hechos era Investigador Especial de la Univer-

sidad. Pérez Balzac, como superior inmediato de Adorno, le había tenido que llamar la atención varias veces a éste por faltas suyas cometidas en el curso de su empleo: había sacado, sin autorización para ello, una copia de una llave maestra; había tomado clases en la Universidad en horas laborables sin permiso de sus superiores; y otras infracciones.

Para la mañana del 21 de junio de 1962 Pérez Balzac había citado al apelante a su oficina. Esa mañana llegó Adorno a la oficina de Pérez Balzac; éste lo invitó a sentarse, lo que rehusó hacer Adorno diciéndole a su superior "Dígame lo que tiene que decirme que yo le escucho de pie." Le informó Pérez Balzac a Adorno que en determinada fecha futura quedaría cesante de su cargo de Investigador Especial pero que podía someter una solicitud para guardia de la Universidad.

Adorno salió de la oficina de Pérez Balzac, tomó un automóvil y se dirigió a la Urbanización Victoria, a casa de un compadre suyo llamado Juan Matos Ortiz y allí le hace unos encargos por si él, Adorno, "no regresaba dentro de los próximos dos o tres días." De allí, Adorno se dirigió a la Urbanización Country Club, donde vivía. Allí, en su casa, tomó un revólver, lo cargó, se echó algunas balas extras en el bolsillo, tomó el carro otra vez y se regresó para la Universidad. Estacionó el vehículo frente a la torre de la Universidad y, armado del revólver, se dirigió a la oficina de Rafael Pérez Balzac. Entró a dicha oficina y de cinco balazos lo mató. Disparó siete veces, para lo cual tuvo que cargar el revólver luego de disparar las primeras seis balas. (Usó un revólver Colt Cobra 38, que es un revólver de cañón corto, calibre 38, de seis tiros.) Dos de los balazos se los pegó cuando ya estaba Pérez Balzac en el suelo.

En apelación señala los siguientes errores:

1. "Se admitieron en evidencia admisiones del apelante obtenidas en violación de sus derechos constitucionales.

2. "No se le advirtió al apelante de su derecho constitucional a tener asistencia de abogado en la etapa investigadora.

3. "No se le advirtió al apelante de su derecho constitucional a permanecer en silencio y no incriminarse.

4. "Se sometió al apelante a un examen psiquiátrico en violación de sus derechos constitucionales.

5. "El tribunal inferior hizo comentarios perjudiciales en presencia del jurado que le privaron al apelante de su derecho a un juicio imparcial.

6. "Las instrucciones dadas al jurado fueron erróneas y confusas.

7. "Las instrucciones adicionales solicitadas por el apelante fueron erróneamente denegadas y evidencia para fundamentarlas erróneamente excluída."

. Veamos lo concerniente a los errores números uno, dos y tres. Se apoyan estos errores en la admisión en evidencia de la declaración del policía Ángel Feliciano. Feliciano habló con el apelante en el cuartel de la policía de Río Piedras la misma mañana de los hechos. La declaración del policía objetada por el apelante es la siguiente:

Primero, en ausencia del jurado:

"P. ¿Podría decir al Tribunal en qué circunstancias tuvo usted ocasión de hablar con él?

R. Yo le pregunté al señor Honorio Lorenzana si él había sido el que había disparado las seis balas y él que se mostraba nervioso, me dijo que sí pero. . . .

.    .    .    .    .    .    .    .

"R. Le pregunté sobre los motivos para la investigación del caso y el señor Lorenzana me había dicho que él había sido suspendido."

Entonces, en presencia del jurado:

"R. Bueno, para la investigación que estaba haciendo, le pregunté al señor Honorio Adorno Lorenzana, si él había sido el que había disparado las seis balas y el señor Adorno. . . .

.    .    .    .    .    .    .    .

"R. Si había sido él el que había disparado las seis balas y el señor Adorno Lorenzana me contestó que sí pero que no recordaba cuántas balas habían sido.

.    .    .    .    .    .    .    .

"R. Le pregunté que cuáles habían sido los motivos que había

tenido y él me informó que él había sido suspendido por el señor Balzac y que había venido a su oficina para que el señor Balzac le explicara los motivos, y el señor Balzac no le contó.

. . . . . . . .

"Para pedir los motivos al señor Balzac por los cuales lo había suspendido y el señor Balzac no le contó por lo que se originó una discusión entre ambos y el señor Honorio Adorno salió hacia afuera y regresando más tarde cuando hizo los disparos."

Se objeta esa declaración por contener admisiones del apelante hechas en la etapa investigativa del proceso. No se cuestiona que dichas admisiones fueron libres y espontáneas, sin el más leve índice de engaño o coacción física o sicológica. Tampoco se niega la comisión del delito. Al momento de declarar el policía Feliciano su declaración no fue objetada en forma alguna ni se presentó prueba en contrario de la misma.

Como el apelante, en la argumentación de estos tres primeros errores se basa principalmente en *Escobedo* v. *Illinois*, 378 U.S. 478 (1964) y en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), es necesario señalar lo siguiente. Cuando se celebró el juicio en este caso (últimos días de julio y primeros de agosto de 1963) todavía no se habían resuelto los casos de *Escobedo, Rivera Escuté* y *Miranda* v. *Arizona*, 384 U.S. 436 (1966). El juicio del apelante se llevó a cabo conforme el derecho vigente entonces. Como hemos señalado, fue un año después de celebrado dicho juicio que el Tribunal Supremo de los Estados Unidos resolvió el caso de *Escobedo* y fue en octubre de 1965 que nosotros resolvimos el de *Rivera Escuté* en donde seguimos los criterios constitucionales de *Escobedo*. Sin embargo, en *Rivera Escuté* no expedimos el hábeas corpus allí solicitado.

Luego de establecidas las radicales normas de *Escobedo* y *Miranda* por el Tribunal Supremo de los Estados Unidos, es en *Johnson* v. *New Jersey*, 384 U.S. 719 (1966) en donde dicho Tribunal, por voz de su Juez Presidente Sr. Warren,

explica el *ratio decidendi* de aquellas decisiones. Ha estado el Tribunal especialmente dedicado, como lo demuestran sus más recientes decisiones y como se desprende claramente de la opinión en *Johnson* v. *New Jersey*, preocupado por velar por la integridad del proceso investigativo (*"the very integrity of the fact-finding process"*) y por evitar que se condenen inocentes (*"the clear danger of convicting the innocent"*). 384 U.S. 728. De la lectura de esa jurisprudencia reciente se advierte que esa preocupación por la legalidad del proceso investigativo fue motivada por los excesos cometidos por la policía de algunos estados. Como se menciona en la opinión concurrente en el caso de *Rivera Escuté*, afortunadamente en Puerto Rico no tenemos un historial notorio de esas prácticas proscritas. Son *Escobedo* y *Miranda* medidas jurisprudenciales heróicas para terminar en los Estados Unidos con las confesiones obtenidas mediante coacción En el caso de autos, se recordará, no hay el más leve indicio de eso.

Luego de explicar el Tribunal, en *Johnson* v. *New Jersey*, su posición militante contra las prácticas ilegales en la investigación y contra confesiones coaccionadas, dicho Tribunal explica:

"Enfatizamos que la retroactividad o no retroactividad de una regla no está determinada en forma automática por la disposición constitucional en que se base. Cada regla de naturaleza constitucional sobre procedimiento criminal tiene sus propias funciones, su propia historia, su propio impacto en la administración de la justicia y la forma en que estos factores concurren inevitablemente variará en cada dictamen."—384 U.S. 728.

En el caso de autos sabemos que no se mancilló la integridad del proceso investigativo mediante coacción y no se duda ni se niega que el apelante cometió el asesinato. Ni él mismo lo niega. Luego, tampoco entra en juego el segundo elemento objeto de preocupación por el Tribunal en *Johnson* v. *New Jersey*—la convicción de un inocente—pues tampoco

hay en el caso de autos el peligro de condenar a un inocente. Como dijimos en *Rivera Escuté*:

"Una nueva interpretación constitucional debe aplicarse retroactivamente sólo en aquellas situaciones en que la nueva regla protege al acusado inocente contra la posibilidad de ser convicto de un crimen que no cometió."

En *Rivera Escuté* rechazamos expresamente la idea de que toda interpretación constitucional es una verdad eterna que se proyecta hacia adelante y hacia atrás hasta el infinito. Allí expresamos que la justificación para la exigencia del derecho a abogado en la etapa acusatoria reside en el propósito de mejorar de ahora en adelante la administración de la justicia eliminando toda fuente de coacción y que no se serviría propósito alguno con aplicar a *Escobedo* retroactivamente.

Concordamos con el Tribunal Supremo de los Estados Unidos cuando éste dice ". . . no encontramos ninguna razón convincente para extender los pronunciamientos de *Escobedo* y *Miranda* a casos que fueron juzgados antes de que esas decisiones se publicaran, aun cuando esos casos estén en apelación," 384 U.S. 733, y cuando añade que ". . . la aplicación retroactiva de *Escobedo* y *Miranda* entorpecería seriamente la administración del derecho penal. Eso requeriría que se juzgasen de nuevo o que se absolviesen muchos reos que fueron convictos mediante evidencia verídica y conforme al derecho vigente entonces." Ibid, 731.

Concluye el Tribunal en *Johnson* v. *New Jersey* que el examen que ha hecho de estas cuestiones en dicho caso lo lleva a concluir que las decisiones de *Escobedo* y *Miranda* deben aplicarse solamente a juicios que se comiencen después de haber sido publicadas dichas decisiones. Explica que los casos futuros se guiarán por esas decisiones y que en los casos ya resueltos los acusados siempre pueden invocar la no voluntariedad de las confesiones, cuando ese sea el caso. [1]

---

[1] "All of the reasons set forth above for making *Escobedo* and *Miranda* nonretroactive suggest that these decisions should apply only

■ De acuerdo con lo anterior este Tribunal expresa que la decisión de *Escobedo* está disponible solamente para personas cuyos juicios empezaron después del 22 de junio de 1964 (fecha de esa decisión) y que las normas establecidas en *Miranda*, las cuales nosotros habíamos establecido previamente en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), están disponibles solamente para personas cuyos juicios no se habían comenzado el 26 de octubre de 1965, día en que resolvimos el citado caso de *Rivera Escuté*.

Creemos que los razonamientos del Tribunal Supremo de los Estados Unidos expresados en *Johnson* v. *New Jersey* conducen a una sana administración de la justicia, salvaguardando los intereses en conflicto de los acusados y de la sociedad y por eso los adoptamos ahora.

## II.

■ Hay otro aspecto de la cuestión por el cual también creemos que no procede revocar a base de los tres errores que estamos discutiendo. Éste es que la defensa del acusado en el juicio consistió en alegar enfermedad mental. Desfiló la prueba pericial y el jurado la aquilató y rindió su veredicto. Al jurado le correspondía decidir sobre esa prueba. *Pueblo* v. *Sánchez*, 79 D.P.R. 116 (1956). Si el apelante admitió haber cometido el acto por el que se le acusó ¿en qué puede haberle perjudicado la declaración del policía Feliciano relacionada con sus admisiones? Además, la prueba de la comisión del delito por parte del apelante, independientemente de sus admisiones e independientemente de la declaración del policía Feliciano, es tan robusta y clara—hay hasta testigos oculares —que no hay la más mínima duda en este Tribunal, como no la hubo en el jurado, de que el apelante cometió el delito.

---

to trials begun after the decisions were announced. Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test." 384 U.S. 732.

No hay necesidad pues de revocar para reivindicar la legalidad del proceso investigativo ni para evitar que pueda condenarse a un inocente.

### III.

El cuarto error señalado consiste en sostener que se violaron los derechos constitucionales del apelante porque se le hizo un examen siquiátrico. Estamos convencidos de que el error carece de mérito. El examen, hecho en la etapa investigativa, tuvo el doble propósito de proteger al acusado, pues no debía ser enjuiciado si era un irresponsable mental, y de proteger al pueblo pues también en ese caso hubiese sido fútil seguir adelante con el proceso. El apelante se sometió voluntariamente al examen. 164 A.L.R. 967; 25 A.L.R.2d 1407; 8 Wigmore, *On Evidence*, ed. 1961, sec. 2265(10), p. 399; *Early* v. *People*, 352 P.2d 112 (1960); *State* v. *Myers*, 67 S.E.2d 506 (1957); *Clements* v. *State*, 210 S.W.2d 912 (1948).

Hemos examinado también lo concerniente a los últimos tres errores. No hay mérito en los mismos y en forma alguna justifican una revocación. Tampoco encontramos mérito en los errores señalados por el apelante en el memorando que presentó por derecho propio.

*Se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Blanco Lugo, aunque no intervino en la disposición del caso, manifiesta su conformidad con la norma anunciada en la opinión, con la aclaración de que extendería el pronunciamiento de *Escobedo* a procesos iniciados después de la fecha en que se resolvió *Rivera Escuté*, todo ello conforme a la opinión concurrente por él emitida en este último caso.