El Pueblo de Puerto Rico, demandante y apelado, *v.* Pedro Guadalupe Rosa c/p "Vivo", acusado y apelante.

*Número:* CR-66-392     *Resuelto:* 10 de marzo de 1967

*Enrique Miranda Merced, Edna Abruña Rodríguez* y *E. Armstrong de Watlington,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda de Escudero, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante fue acusado conjuntamente con otras dos personas de los delitos de asesinato en primer grado, escalamiento en primer grado y hurto mayor.

En un juicio por separado y viéndose los tres casos conjuntamente ante el mismo jurado, éste le declaró culpable de asesinato en primer grado, culpable de escalamiento en primer grado y no culpable de hurto mayor.

En este recurso de apelación señala como único error, la admisión "en evidencia de la declaración jurada (confesión) que le tomara al acusado el Fiscal Wilfredo Figueroa el día 6 de agosto de 1965."

Dicho error, según veremos más adelante, no fue cometido.

En horas de la madrugada del domingo lro. de agosto de 1965, le fue hurtado al Sr. Luis Colón Salgado del frente de su casa en la Urbanización Santiago Iglesias de Río Piedras, Puerto Rico, su automóvil marca Volkswagen, color azul gris, modelo 1958, tablillas Núm. 640-835. A las siete de la mañana de ese día notificó a la policía del hurto de su referido automóvil. Alrededor de las diez de la noche de ese mismo día lro. de agosto, los policías Antonio Concepción y Luis R. Delgado quienes se encontraban trabajando en el área de Mona-

cillos entraron al Garaje Gulf que queda en la Avenida De Diego, Carretera Núm. 21 de Monacillos y allí hablaron con el señor Ruperto Rodríguez Roque quien había comenzado su turno de trabajo ese día en el Garaje Gulf a las diez de la noche. Todo allí estaba normal. La policía se dirigió hacia Monacillos y como a veinticinco o cincuenta metros del garaje vieron un automóvil marca Volkswagen, tablillas 640-835, metido en la maleza al lado de un árbol de mango. Llamaron al cuartel de Puerto Nuevo y ese automóvil aparecía reportado como hurtado. Lo removieron de ese sitio y lo llevaron hasta el garaje donde le pidieron prestado un destornillador al señor Ruperto Rodríguez Roque. Pusieron en marcha el motor del Volkswagen empujándolo. El policía Delgado lo llevó al cuartel, llevándose consigo el destornillador por si tenía necesidad de usarlo. El otro policía permaneció en el garaje como diez o quince minutos y luego se fue a buscar a su compañero al cuartel. Regresaron por la Avenida San Patricio y se dirigieron al garaje para devolverle el destornillador al señor Ruperto Rodríguez Roque. Al llegar encontraron a dicho señor Rodríguez Roque muerto, sentado en una silla, recostado y debajo de la silla había un charco de sangre. La puerta de cristal del garaje estaba rota. El bolsillo del pantalón de Ruperto Rodríguez Roque se encontraba virado al revés. En el puño de la mano izquierda tenía la marca del reloj pulsera pero no así el reloj que el policía Delgado le notó cuando lo vio la primera vez esa noche. El señor Rodríguez Roque, quien era lisiado porque le faltaba una de sus piernas, falleció a consecuencia de un golpe contundente que recibió esa noche en la cabeza. La oficina del garaje fue escalada, rompieron la puerta de cristal, penetraron en ella y hurtaron dinero de la caja registradora.

Como a las 9:30 de la noche en el Caserío Vista Hermosa de ese día lro. de agosto, el acusado fue visto con dos personas más en el Volkswagen hurtado y que fue encontrado al

lado del árbol de mango en Monacillos cerca del garaje Gulf donde fue asesinado Ruperto Rodríguez Roque.

Unos días después el acusado y otros sospechosos del crimen fueron detenidos y conducidos al Cuartel General de la Policía. De allí los trasladaron a la fiscalía de San Juan donde el apelante prestó la declaración jurada cuya admisión en evidencia señala como error.

El apelante fue interrogado en el Cuartel de la Policía, según su propio testimonio, por los detectives y un teniente pero no contestó sus preguntas, ni confesó. Fue en las oficinas del Fiscal que prestó la declaración jurada en la noche del 6 de agosto de 1965. Tanto de la declaración jurada como del testimonio prestado en el juicio por el Fiscal Figueroa, al acusado se le hicieron todas las advertencias exigidas hasta entonces por la jurisprudencia. La oficina del Fiscal, donde estaba el acusado prestando la declaración, era visible desde el pasillo a través de unos ventanales de cristal. En el pasillo había numerosas personas, entre ellas, los otros sospechosos y algunos familiares de éstos. El Fiscal investigador le informó al apelante, antes de que éste declarara, que él era un presunto acusado en un caso que aparejaba pena de reclusión perpetua; que él no estaba obligado a declarar y que si decía algo que lo incriminara el fiscal lo utilizaría en su contra; que si él le había hecho admisiones a la policía, eso en nada influiría para que se negara a declarar; que él sería tratado como los demás aunque algún policía le hubiera dicho que el fiscal lo trataría mejor; que no le ofrecía inmunidad, no le ofrecía usarlo como testigo del Pueblo. También le preguntó si la policía lo había agredido y contestó que no, que lo habían tratado bien. Declaró también el fiscal que le advirtió de su derecho a estar representado por abogado; que no le advirtió de su derecho a que se le proveyera de asistencia de abogado, si el acusado no estaba en condiciones de contratarlo.

La declaración jurada admitida en evidencia es como sigue:

"El Pueblo de Puerto Rico vs. Carmelo Falú Pérez, Pedro de León, Heriberto Castro y Pedro Guadalupe Rosa, por asesinato en primer grado y robo. Declaración jurada del testigo Pedro Guadalupe Rosa. En San Juan, Puerto Rico a seis de agosto de mil novecientos sesenta y cinco. Yo, Pedro Guadalupe Rosa, vecino de Río Piedras, Puerto Rico, con residencia en barrio Monacillos, cilómetro [sic] punto tres punto cuatro, de diecinueve años de edad, ante el fiscal comparezco y previas las advertencias de ley, que me han sido hechas, espontáneamente bajo juramento declaro. Fiscal: Yo soy el fiscal Wilfredo Figueroa Vélez y estoy investigando unos hechos de una muerte. Le advierto que usted puede ser acusado. Que tiene derecho a ver a sus familiares. A contratar abogado. A no declarar y lo que usted diga lo dice sin promesas de mi parte y libre y voluntariamente, sin que yo ni ninguna otra persona le coaccione para que usted declare. Desea usted declarar? Testigo: Sí señor. Que la noche del domingo pasado, primero de agosto del mil novecientos sesenta y cinco, Heri y Pelón bajaban en un carro Volkswagen azul claro, que es ese mismo que ví hace un momento estacionado detrás de la fiscalía. Que esto fue como a las nueve y media de la noche. Que me invitaron a dar una vuelta y me monté con ellos en el carro. Que fuimos a buscar a Coco a la casa y él estaba en su casa y se vino con nosotros en el carro. Que seguimos para el caserío Vista Hermosa. Allí reviramos porque venía la jara y regresamos hasta el palo de mangó, donde lo dejamos parado. Que el palo de mangó queda más arriba de la luz que hay frente al garage Gulf, que está al lado de la Suiza Dairy. Que a invitación de Heri y de Coco íbamos a asaltar al señor que despacha la gasolina en el garage Gulf. Que los cuatro nos metimos directamente por el pastizal que está detrás del garage. Que en el carro llevábamos un tubo, que es ese mismo que usted, señor fiscal, me muestra en este momento. Y ese tubo lo cogió Heri. Que Heri se metió por el pino donde alzan los carros y el señor estaba sentado al lado de una máquina de cigarrillos y vino Heri y le dio un cantazo con el tubo y el hombre se quedó sentado en la silla y Heri le sacó los chavos del bolsillo al hombre. Entonces Heri rompió con una piedra

el cristal del lado del pino y Heri y yo nos metimos adentro del garage y sacamos un dinero de la caja registradora. Que mientras hacíamos esto, Pelón y Coco velaban detrás del garage. Que Heri me dio un menudo que sacó de la caja registradora y me lo eché al bolsillo. Que entonces nos fuimos a pie, porque la policía que yo mencioné antes se había llevado el carro. Caminamos a pie hasta el colmado Molina y en el callejón Ortiz nos repartimos los chavos y a todos nos tocó a seis dólares setenta y cinco centavos cada uno. Que luego yo cogí para mi casa. Que el tubo Heri se lo pasó a Coco y éste lo tiró en el pastizal detrás del garage. Firmado Pedro Guadalupe Rosa. Jurado y suscrito ante mí, seis de agosto de mil novecientos sesenta y cinco, Wilfredo Figueroa Vélez, fiscal." (T.E. págs. 245 a 247.)

El apelante negó que el fiscal le hiciera las advertencias antes relacionadas; negó que leyera la declaración jurada antes de firmarla y además declaró que en el cuartel de la policía le habían dado golpes por la rodilla.

■ El juez resolvió correctamente que dicha declaración fue prestada voluntariamente por el acusado. Así lo revela el estudio que hemos hecho de la transcripción de la evidencia.

Lo importante y determinante de si se ha violado o no el derecho del acusado a no incriminarse, no es que las garantías ofrecidas al acusado para evitarlo surjan del documento que contiene la confesión del acusado, sino más bien si en verdad y como cuestión de realidad la confesión quedó rodeada de todas dichas garantías, y que como consecuencia la confesión sea hecha voluntariamente por el acusado con el conocimiento pleno de todos sus derechos constitucionales.

■ Ahora bien, no es suficiente advertencia para proteger el derecho del acusado a no incriminarse que se le informe de su derecho a consultar con abogado antes de declarar y a tener asistencia de abogado durante el interrogatorio. Es necesario además que se le informe de su derecho a ser provisto de asistencia de abogado en caso de que no esté en condiciones de contratar o procurarse los servicios de uno.

Así se resolvió por el Tribunal Supremo de los Estados Unidos en 13 de junio de 1966. *Miranda* v. *Arizona* (759); *Westsover* v. *United States* (761); *California* v. *Stewart* (584) y *Vignera* v. *New York* (760), 34 U.S.L. Week 4521 (U.S. June 13, 1966). Sin embargo, en *Pueblo* v. *Adorno Lorenzana*, 93 D.P.R. 788 (1966), decidimos "que las normas establecidas en *Miranda*, las cuales nosotros habíamos establecido previamente en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), están disponibles solamente para personas cuyos juicios no se habían comenzado el 26 de octubre de 1965, día en que resolvimos el citado caso de *Rivera Escuté*."

En el citado caso de *Rivera Escuté* no establecimos todas las normas del caso de *Miranda*. De suerte que lo que quisimos decir en *Adorno Lorenzana* fue que aquellas normas establecidas en *Miranda* y que a su vez habían sido adoptadas en *Rivera Escuté* están disponibles solamente para las personas cuyos juicios no se habían comenzado el 26 de octubre de 1965; pero las normas de *Miranda* que no fueron adoptadas anticipadamente en *Rivera Escuté*, sólo pueden estar disponibles para las personas cuyos juicios comiencen con posterioridad al 13 de junio de 1966, fecha de la decisión del caso de *Miranda*.

Una de las normas de este caso de *Miranda*, no adoptada en *Rivera Escuté* es la que se refiere a la advertencia al acusado, antes de que declare en el proceso investigativo, que tiene derecho a que el Estado le asigne un abogado para que le preste asistencia legal en esa etapa, si no está en condiciones de contratar los servicios de uno. Si en verdad no adoptamos esta norma en *Rivera Escuté*, la omisión de tal advertencia sólo puede estar asequible a los acusados cuyos juicios se celebren con posterioridad a la decisión del caso de *Miranda*.

Las normas que establecimos en *Rivera Escuté*, según se desprenden de la opinión emitida en el caso son las que copiamos textualmente a continuación:

"De acuerdo con los pronunciamientos de *Escobedo* v. *Illinois* según los expone el Juez Goldberg, que son la razón de ser de las conclusiones del Tribunal anteriormente transcritas, y de acuerdo con aquel criterio judicial que aceptamos como una autorizada y correcta interpretación de ese fallo y de su significado y alcance, decimos ahora que no son admisibles en evidencia en el 'proceso criminal' la confesión de un acusado o sospechoso o las admisiones que le perjudiquen sustancialmente, obtenidas de él bajo custodia de la policía u otra autoridad competente mientras se le interroga con el fin de obtener manifestaciones incriminatorias: (1) cuando no fue advertido de manera eficaz por la policía u otra autoridad competente antes de declarar, de su derecho constitucional absoluto a permanecer en silencio y a no incriminarse; y (2) *cuando no fue advertido por la policía u otra autoridad competente antes de declarar, de su derecho a tener ayuda de abogado,* sin que el hecho de no haber sido solicitada afirmativamente por el acusado releve de la obligación de advertirle su derecho a tenerla; o (3) cuando solicitó consultar con abogado y no se le permitió el estar así asistido al obtenerse su declaración." (Énfasis nuestro.) (Pág. 776 de la Opinión.)

.    .    .    .    .    .    .    .

"En las circunstancias anteriormente señaladas, o sea cuando la investigación toma el cariz de acusatoria y se posa sobre un sospechoso en particular con miras a sacarle una confesión, indica el caso de *Escobedo* que el proceso adversativo cobra realidad. De que sea ya *adversativo* surge la obligación de la policía u otra autoridad competente de advertirle de su derecho constitucional a permanecer en silencio y no incriminarse, *y de su derecho constitucional a tener allí y entonces asistencia de abogado y el permitirle que la tenga."* (Énfasis nuestro.) (Pág. 779 de la Opinión.)

La opinión termina así:

"Convencidos como estamos que la ausencia de asistencia legal cuando el peticionario dio su confesión según era la ley

entonces no afectó el hecho en sí de la culpabilidad o inocencia del peticionario por cuanto sostuvimos la voluntariedad de la confesión, no hay base, bajo los principios arriba enunciados, para anular colateralmente su convicción y aplicarle retroactivamente *la norma constitucional que hoy adoptamos para la administración de nuestra justicia criminal, siguiendo el pronunciamiento de Escobedo* v. *Illinois.*" (Énfasis nuestro.)

En el presente caso se hicieron al acusado todas las advertencias que indicamos como indispensables en el caso de *Rivera Escuté*. No se le hizo la advertencia adicional del caso de *Miranda* sobre su derecho a que el Estado le proveyera de asistencia legal, pero como la decisión de *Miranda* fue posterior a la celebración del juicio en este caso tal defensa no estaba asequible al apelante.

*Se confirma la sentencia apelada.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Santana Becerra concurre con el resultado.