EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JENNY DE LEÓN CLAUDIO, acusada y apelante.

*Número:* CR-69-36      *Resuelto:* 30 de junio de 1970

*Benjamín Ortiz,* abogado de la apelante; *Gilberto Gierbolini, Procurador General,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: La apelante fue convicta por un jurado y sentenciada a una pena de 2 a 4 años de presidio por la comisión de un delito de hurto mayor.

En solicitud de que revoquemos dicha sentencia alega la comisión de varios errores.

En los dos primeros señala que la prueba de cargo es inherentemente increíble, improbable, contrario a las realidades del curso natural de las cosas e indigna de credibilidad y que el jurado cometió error al darle crédito al testimonio de Pablo Ramos Acevedo.

No tiene razón la apelante. La prueba de cargo, según la resume el Procurador General, es como sigue:

"Allá para el 22 de diciembre de 1967, como a las 10:30 de la noche, Pablo Ramos Acevedo se presentó con un sobrino suyo llamado Vicente Burgos Ramos en el Bar Las Vegas en el sector de Puerta de Tierra. Se sentaron en una mesa y pidieron dos cuba libres. Estando bebiendo llegó la acusada-apelante con otra joven y le preguntaron al testigo y a su sobrino si les pagaban unos tragos. Ellos accedieron y ellas se sentaron a la mesa. Como a los diez o quince minutos el testigo sacó un dinero para 'pagar el "round"' entonces la acusada-apelante lo invitó a bailar. Bailaron, se sentaron de nuevo y volvieron a beber. El testigo volvió a sacar su dinero para pagar y entonces la acusada-apelante lo invitó para ir a un hotel situado en el mismo sector de el Bar Las Vegas. El testigo aceptó luego de ajustar el precio de la compañía de la acusada en $40 por una hora. (T.E. págs. 1 a la 11.)

Marcharon al hotel en cuestión y una vez en una habitación el testigo procedió a revisar la misma mirando en el baño y debajo de la cama. La acusada-apelante ordenó unos tragos a un empleado y el testigo volvió a sacar la 'paca' de dinero para pagarlos. La 'paca' en cuestión contenía billetes de cien, cincuenta, veinte, diez y un dólar. (T.E. págs. 10 a la 12.) Entonces ocurrió lo siguiente, según lo relata el testigo: (T.E. págs. 14, 15 y 16.)

R. Yo me encontraba esa noche encima con los $2,026.00, entonces saqué un billete de diez y le dí a ella para que pagara a un señor que está por ahí que se encontraba sirviendo, en-

tonces ella le dijo 'coge la vuelta' entonces yo le dije por qué ella hacía eso que a mí me daba trabajo ganarme el dinero entonces ella me contestó 'no te apures si tú tienes billetes arriba' y entonces le dije 'pero me ha dado trabajo ganarme el dinero porque he estado mucho tiempo por ello,' pero que siguió pasándome la mano y eso pasó y entonces ahí fue donde vinimos a acostarnos en la cama y entonces inmediatamente terminó pues ella se levantó y como había quedado de estar una hora yo la ví que se metió al lavabo, se lavó y se cambió de ropa, entonces yo le pregunté que si ella no me había dicho que iba a estar una hora; entonces me contestó que ella iba a donde una amiga de ella que vivía, que estaba en otro cuarto y viraba rápido. Al contestarme esas palabras yo volví y me acosté, desnudo que estaba, en la cama a mirar para arriba y le dije 'pues está bien pero avanza'. Inmediatamente me quedé a mirar para arriba y ví con el rabo del ojo el pantalón mío que se movía y miré rápido y ví que ella llevaba el dinero.

HON. JUEZ: —

Un momentito. Siga.

R. Entonces como yo estaba completamente desnudo pues traté de agarrarla y ahí mismo me empujó la puerta que estaba semi-abierta y envaló. Ahí lo único que yo pude hacer fue gritar al cajero; 'cójanme a esa mujer que me llevó todo el dinero' o $2,000.00 que tenía encima y entonces la contestación del cajero fue . . .

HON. JUEZ: —

Un momentito. Eso es inmaterial la contestación del cajero.

P. Usted le gritó al cajero eso que usted dice.

R. Sí, señor.

P. ¿Y qué hizo ella?

R. Le grité a él.

P. ¿Qué hizo ella?

R. Ella seguida, inmediatamente cogió el ascensor y bajó para abajo porque estaba hasta abierto el ascensor.

P. ¿La volvió a ver usted?

R. La volví a ver como a los 3 o 4 días que la detective la arrestó y la llevó a mi casa y yo no me encontraba entonces en el cuartel yo la pude reconocer.

Sobre el dinero hurtado declaró el testigo que 'tenía encima' $2,026.00. De ese dinero $500 provenían de un préstamo que le

había hecho un cuñado ese mismo día y el resto de una compensación del Fondo del Seguro del Estado. De esa cantidad dispuso de $100 entregados al sobrino que le acompañaba y de $40 pagados a la acusada-apelante. (T.E. págs. 16 y 17.)

En el contrainterrogatorio declaró que nunca antes había estado en el Bar Las Vegas y que no conocía a la acusada hasta el día de los hechos. (T.E. págs. 21, 22 y 26.) Describió además como había colocado el pantalón con el dinero sobre una mesa y cómo la acusada lo cambió de sitio guindándolo de una bisagra para que no se le mojara. (T.E. págs. 36 y 37.)

Declaró el testigo que el día de los hechos había salido de su casa en Guaynabo en busca de unos albañiles; que conducía su propio automóvil y que no habían entrado a sitio alguno salvo en la casa de los albañiles. (T.E. págs. 48 y 49.) Sobre las circunstancias en que fue removido el dinero del pantalón declaró haber visto a la acusada meter una mano en el bolsillo del pantalón y sacarla con el dinero. (T.E. págs. 54, 58, 59 y 61.) Declaró no haber tenido discusión alguna con la acusada (T.E. pág. 62) y que después del hurto la acusada había bajado rápidamente en un ascensor. (T.E. págs. 63 y 64.) El testigo por su parte se vistió y salió detrás de la acusada bajando por una escalera. Le dió la queja al 'manager' pero no logró darle alcance a la acusada. (T.E. págs. 71 y 73.) El 'manager' llamó a la Policía y el testigo la esperó retirándose después que la Policía 'tomó nota'. (T.E. pág. 76.)

Siguió declarando el testigo en el contrainterrogatorio que aparte de su sobrino y las mujeres, más nadie había estado en la mesa, (T.E. pág. 78) que le había hecho entrega de los cien dólares a su sobrino en la mesa y que éste le había devuelto luego ochenta dólares habiendo sacado la 'paca' de dinero tres veces mientras estuvieron sentados en la mesa. (T.E. págs. 79 a la 80.) Declaró haber visto a los albañiles que contrató para reparar su casa como a las 8:00 ó 8:30, marchándose luego para el Bar 'Las Vegas', (T.E. págs. 91 y 92) acompañado solamente de su sobrino. (T.E. pág. 94.)

El testigo de cargo Juan Bautista Nieves declaró ser cajero del Hotel Royal, declaró conocer a la acusada y haberla visto con el testigo Pablo Ramos Acevedo el día de los hechos y haberle arrendado a ambos un cuarto. (T.E. págs. 104–107.) Luego vió a la acusada salir y bajar por el ascensor y al testigo Ramos reclamarle a la acusada 'dáme lo mío' y bajar luego por

la escalera. Más tarde vio al testigo Ramos regresar con la Policía. (T.E. págs. 106–108.)

En el contrainterrogatorio declaró que el incidente había ocurrido cerca de las 11:00 (T.E. pág. 109) aunque luego dijo que el testigo Ramos y la apelante habían llegado a la habitación de 2:30 a 3:00. (T.E. pág. 114.) Declaró haber oído a la acusada y al testigo Ramos discutiendo en la habitación (T.E. pág. 111) y que luego del incidente el testigo había regresado a su cuarto para bañarse." (Informe Procurador General, págs. 4 a 8.)

■ Esa prueba está sustancialmente corroborada por el testimonio de la propia acusada excepto el hecho de que ella metiera su mano en el bolsillo del pantalón del perjudicado y le hurtara el dinero. Su versión, no creída por el jurado, fue al efecto de que el dinero que el perjudicado le pedía le devolviera, eran los $20 que él le había pagado por sus servicios. No podemos basarnos en detalles sin importancia en el testimonio del perjudicado para juzgarlo indigno de crédito. Como sostiene el Procurador General su testimonio sobre lo ocurrido no es improbable y habiéndole merecido crédito al jurado, es suficiente para sostener la convicción de la apelante. *Pueblo* v. *García Félix*, 90 D.P.R. 158 (1964).

■ No se cometió error por el tribunal sentenciador, como se alega en el tercer señalamiento, al instruir al jurado sobre la impugnación por el fiscal del testigo de cargo Juan Bautista Nieves, por alegadas manifestaciones contradictorias ni el juez indicó al jurado que el fiscal había destruido la credibilidad de dicho testigo.

Aunque la instrucción transmitida al jurado por el juez al admitir en evidencia una declaración jurada del testigo de cargo Juan Bautista Nieves para impugnar su veracidad pudo haber sido más clara, considerada la misma en su totalidad, y no habiendo la acusada hecho reparo alguno a la misma, no creemos que haya lesionado los derechos sustanciales de la apelante y no debe, a base de esa instrucción, revocarse la sentencia apelada. Dicha instrucción es como sigue:

"Damas y caballeros del jurado, en relación con esta declaración que el Tribunal ha admitido y que el Fiscal ha ofrecido, instruyo a ustedes de la manera siguiente: ustedes no pueden considerar para nada el contenido de esta declaración como que establezca prueba positiva o de alguna clase conducente a establecer la culpabilidad de la acusada ante ustedes. La prueba que ustedes tienen que analizar para resolver si esta acusada es o no culpable del delito que se le imputa es el testimonio de Juan Bautista Nieves Rodríguez, que es el que nos ocupa en este momento, el testimonio que él presta ante ustedes en sala y en juicio. Es a base de ese testimonio que ustedes tienen que resolver sopesando, ponderando qué alcance tiene si alguno en relación con la alegada culpabilidad de la acusada. Esto es así porque estas declaraciones son tomadas ex-parte, en otras palabras sin que haya tenido la acusada la oportunidad de enfrentarse a la persona que presta esa declaración para poder cuestionarle en relación con su relato de los hechos, su credibilidad, etc. La declaración ha sido ofrecida por el Fiscal con el propósito, y a esos únicos propósitos la ha admitido el Tribunal, de impugnar, vulnerar, ante ustedes el testimonio de un propio testigo del Fiscal que se llama Juan Bautista Nieves. Una persona, una parte presenta un testigo y esa parte queda obligado por la credibilidad de ese testigo. Bien, al presentar aquí el Fiscal a Juan Bautista Nieves quedaba obligado por la credibilidad de su testimonio ante ustedes, pero entonces el Fiscal destruye esa misma credibilidad de ese testigo al cual ha quedado comprometido ofreciendo esta declaración previa de él. Ustedes pueden creer que este señor dijo toda la verdad en esta declaración y que aquí no dijo verdad; ustedes pueden resolver por la veracidad que entiendan ustedes que puede haber dicho en esta declaración. Repito ustedes tienen que acudir a lo que él ha dicho en sala ante ustedes bajo juramento para resolver la clase de crédito, importancia y mérito ustedes le ofrecen a este testimonio de él en sala pero nunca repito, esta declaración puede hacer prueba contra la acusada. Adelante. ¿Qué más?" (Informe Procurador, págs. 11 a 13.)

El cuarto señalamiento se refiere a las instrucciones transmitidas al jurado sobre la impugnación del testigo Vicente Burgos Ramos por manifestaciones previas contradictorias. El error no fue cometido.

El testigo Burgos Ramos fue renunciado por el fiscal como testigo de cargo por ser prueba acumulativa. La defensa lo sentó a declarar como su testigo. Para impugnarlo por manifestaciones previas contradictorias la defensa presentó el testimonio del abogado Manuel García Marrero. No fue error del tribunal instruir al jurado en sentido que Burgos Ramos era un testigo de la defensa pues como tal fue utilizado por ésta. Además el tribunal instruyó correctamente al jurado al decirles que la declaración prestada en corte por el abogado García Marrero no era prueba directa de los hechos conducentes a exonerar a la acusada y que se había admitido a los solos efectos de impugnar la credibilidad del testigo Burgos Ramos.

En el quinto señalamiento se le imputa al tribunal haber hecho manifestaciones lesivas a la acusada en presencia del jurado y en el noveno señalamiento se arguye que fue error permitir al fiscal hacer preguntas relativas al señor Tursi.

Ambos señalamientos son inmeritorios. El juez preguntó a un testigo: ¿Qué clase de trabajo hace Jenny allí? Sobre el trabajo que hacía la acusada, declararon varios testigos y ella mismo admitió en la silla de los testigos que su trabajo consistía en entretener a los clientes del negocio tomando licor con ellos y luego tener relaciones sexuales mediante paga. La propia acusada declaró que era empleada de Tursi y las preguntas del fiscal sobre si Tursi le había fiado en nada perjudicaba sus derechos.

Tampoco fue error, según se alega en el sexto señalamiento que el juez ordenara la eliminación de parte del testimonio del testigo Juan Maldonado al efecto de que el perjudicado le había dicho que le faltaba un dinero que no estaba seguro si había sido ella. Aparte de que no se sentaron las bases para impugnar el testimonio directo del perjudicado, la acusada no se quejó de la actuación del juez,

ni el incidente reviste tal importancia fundamental que nos mueva a considerarlo aun cuando no hubo objeción o protesta de la acusada. *Pueblo* v. *Pimentel Camacho,* 89 D.P.R. 135 (1963).

■ El séptimo error, en el supuesto de que se hubiera cometido no amerita la revocación de la sentencia. El juez ordenó que se eliminara una contestación del testigo Juan Maldonado en el sentido de que el perjudicado le dijo "que le habían faltado $1800.00 y después 500.00 y después dijo que no sabía el dinero que ele [*sic*] había faltado." Después de ordenarse esa eliminación, el testigo siguió declarando que el perjudicado le habló de dos cifras distintas. Esa parte no fue eliminada. Logró pues la defensa llevar al jurado lo que intentaba, o sea, que el perjudicado le había dicho al testigo Maldonado que no estaba seguro del dinero que le faltaba.

■ Finalmente, tampoco conlleva la revocación de la sentencia el hecho de que el juez dijera por error, durante una argumentación con el abogado defensor, que determinado testigo era de la defensa. No hubo objeción alguna a ese comentario ni se solicitó que se corrigiera el error. Más aún, la defensa estipuló que el juez no hiciera el resumen de la prueba al transmitir sus instrucciones al jurado, oportunidad esa en que lo más probable era que el juez hiciera referencia a los testigos de cargo presentados por el fiscal para sostener la acusación. De todos modos, el jurado sabía que el indicado testigo había sido presentado por el fiscal como prueba de cargo. Esto dispone del octavo señalamiento de error.

*Por los motivos expresados, se confirmará la sentencia apelada.*

El Juez Presidente Señor Negrón Fernández, no intervino.