EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* BENITO NIEVES RAMOS, acusado y apelante.

*Número:* CR-72-122          *Resuelto:* 31 de mayo de 1973

532

*Jorge L. Chaar Cacho,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Rurico E. Rivera Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

SENTENCIA

El apelante fue acusado por los delitos de asesinato en primer grado e infracción al Art. 4 de la Ley de Armas. Fue encontrado culpable del delito de asesinato en segundo grado por un jurado, y de la infracción a la Ley de Armas por el juez sentenciador.

Se señala como primer error cometido por el tribunal de instancia la admisión de una declaración jurada prestada por el acusado ante un fiscal horas después de los hechos que dieron lugar a la acusación. En dicha declaración, que fue leída al jurado, el acusado admite que atacó a su víctima con un machete infiriéndole varias heridas en la cabeza sin que mediasen palabras y estando la víctima desarmada. Se aduce que dicha declaración es inadmisible por la condición de analfabeta del acusado que impide una renuncia válida de sus derechos constitucionales. Se sostiene además que no se le informó en detalle en qué consistía cada uno de dichos derechos constitucionales, lo que le privó de la oportunidad de renunciar a cada uno de ellos individualmente.

El error no fue cometido. El fiscal le advirtió de sus derechos constitucionales antes de tomarle la declaración

jurada. El incidente entre el fiscal y el apelante antes de la toma de la declaración se desarrolló en la forma siguiente:

"FISCAL: ¿cual es su nombre?

TESTIGO: BENITO NIEVES RAMOS.

F: ¿A usted lo conocen por algún apodo?

T: Me dicen Beno.

F: Mire Benito, yo soy el Fiscal Noel Vera Mercado de Aguadilla y estoy practicando esta investigación relacionada con la muerte de Vicente Valentín Rodríguez en la que usted es un presunto acusado de estos hechos. Que usted como presunto acusado tiene ciertos derechos que le garantizan las leyes de Puerto Rico y la Constitución de Puerto Rico. Usted tiene derecho a prestar o no prestar declaración si así usted lo desea y la declaración que usted preste puede ser usada a su favor o en su contra el día del juicio. Usted tiene derecho a estar representado por abogado o por algún familiar que usted desee que esté presente en este acto. Tiene derecho además usted, a que nadie lo amenace, a que nadie le haga oferta de clase alguna, a que nadie lo agolpee, a que nadie le dé. Que esos son sus derechos como acusado y yo le garantizo esos derechos de que nadie lo obligue a usted a hacer nada ni que se amenace en forma alguna. En caso de que usted no tenga dinero, que no tenga chavos para contratar los servicios de un abogado en este acto el mismo gobierno, el Estado le asigna un abogado para que lo represente a usted en este momento. De usted prestar declaración tiene que ser una usted quiera decir, que usted quiera decir sin que nadie lo obligue ni lo amenace. ¿Usted me ha entendido lo que yo le he dicho?

T: Si entiendo.

F: Después de esto que yo le he dicho y que usted me dice que me ha entendido, ¿usted me desea decir qué fue lo que pasó hoy 17 de febrero de 1968 allá en el barrio Aceitunas?

T: Sí señor.

F: Levante la mano derecha. ¿Jura decir la verdad y nada más que la verdad?

T: Sí, señor, la verdad digo aquí y dondequiera.

F: ¿Qué es lo que usted me quiere decir entonces?"

Luego de finalizado el interrogatorio el fiscal volvió a preguntar al acusado lo siguiente:

"F: Vuelvo y le pregunto, Benito, si usted quiere añadir o quiere borrar esto que usted ha dicho?

T: En ningún momento se borra eso.

F: ¿Vuelvo y le pregunto si alguien lo ha obligado, o lo ha amenazado o lo ha tratado mal a usted por algún policía, detective o sargento?

T: No, señor, a casa fue un policía lo más decente.

F: ¿Usted conoce al Sargento Custodio González, ese fue el que fue a su casa?

T: Fue el que yo le di el machete."

El fiscal advirtió adecuadamente al acusado sobre sus derechos constitucionales a mantenerse en silencio, a no incriminarse y a tener allí asistencia de abogado según las normas que establecimos en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965) conforme al caso de *Escobedo* v. *Illinois*, 378 U.S. 478 (1964). En adición le informó que de no tener dinero para pagar a un abogado el Estado se lo proveería. Véanse, *Pueblo* v. *De Jesús Cabrera*, 94 D.P.R. 450 (1967); *Pueblo* v. *Guadalupe Rosa*, 94 D.P.R. 190 (1967).

El récord revela que la renuncia del apelante a los derechos que la ley le concede fue inteligente y voluntaria y basada en el conocimiento de todos sus derechos constitucionales. *Pueblo* v. *Guadalupe Rosa*, supra, pág. 195. La voluntariedad no se cuestiona. Y, respecto a lo inteligente de la renuncia, una mera lectura de la declaración jurada en cuestión y del extenso interrogatorio a que fue sometido el apelante durante el juicio nos convence que el apelante tenía la capacidad necesaria, aun sin saber leer y escribir, para entender plenamente el alcance de las advertencias que se le hicieron y sobre el significado y probables consecuencias de su confesión. El que las advertencias no fuesen explicadas individualmente ni los derechos renunciados por separado no ha lesionado en forma alguna los derechos constitucionales del apelante.

Como segundo error se señala que el fiscal "asumió una postura reñida con los altos principios de justicia al parciali-

zarse de tal forma como 'acusador' que fue altamente impropia su tendencia marcada de ocultar e imposibilitar hasta donde le fue posible, evidencia que le era de beneficio al acusado-apelante." Se aduce para sostener este apuntamiento que la defensa solicitó y obtuvo del tribunal autorización para inspeccionar documentos, papeles y objetos en posesión del fiscal al amparo de la Regla 95 de Procedimiento Criminal, pero que el fiscal no le mostró, antes del juicio, una cuchilla "corva" alegadamente perteneciente al difunto que fue encontrada cerca del lugar de los hechos.

■ El apelante plantea ahora por primera vez la alegada ocultación de la cuchilla por el fiscal. Sin embargo, hemos examinado detenidamente los autos originales y la transcripción de evidencia del presente caso, la que no nos permite concluir que hubiere habido ocultación de la referida pieza de evidencia. Independientemente de ello entendemos que la preparación de la defensa del apelante no sufrió perjuicio sustancial por tal motivo. El fiscal entregó dicha cuchilla a la defensa durante el transcurso del juicio habiendo la defensa logrado su principal objetivo al obtener la misma y ofrecerla en evidencia.

En el tercer señalamiento de error se atacan las instrucciones ofrecidas al jurado, desglosándolo en cinco partes: (1) que las instrucciones sobre el delito de asesinato se ofrecieron en forma desarticulada y tienden a confundir al jurado; (2) que la sala sentenciadora se limitó a leer suscintamente lo establecido en el Código Penal sobre el delito de homicidio; (3) que las instrucciones sobre la prueba de buena reputación resultan ser indiferentes; (4) que las instrucciones sobre defensa propia no se ofrecieron hasta que la defensa las solicitó y que las mismas son inadecuadas; (5) que no se instruyó al jurado sobre la admisión que hizo el tribunal de la declaración jurada del apelante.

■ El apelante no solicitó instrucciones adicionales ni objetó las instrucciones sobre los aspectos que ahora se tratan

de impugnar. Al no haberlo hecho es de aplicación la Regla 137 de Procedimiento Criminal que reza así: "Ninguna de las partes podrá señalar como error cualquiera porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar . . . ." La ausencia de tal solicitud u objeción constituye una renuncia al planteamiento en apelación siempre que no se hayan lesionado derechos fundamentales del apelante. *Pueblo* v. *Torres Rolón*, 99 D.P.R. 970 (1971); *Pueblo* v. *Álvarez de Jesús*, 99 D.P.R. 124 (1970); *Pueblo* v. *De León Claudio*, 99 D.P.R. 266 (1970); *Pueblo* v. *Negrón Vélez*, 96 D.P.R. 419 (1968). Aunque lo expresado precedentemente es suficiente para disponer del planteamiento, pasamos a discutir los apuntamientos del tercer error:

(1) Las instrucciones impartidas por el juez sentenciador en relación con el delito de asesinato y sus dos grados establecen claramente la diferencia entre uno y otro de acuerdo con la ley y la jurisprudencia aplicable. También instruyó el juez de instancia diáfanamente al jurado sobre la cuestión de duda razonable entre el asesinato en primer grado y en segundo grado advirtiéndoles que de tener duda con respecto al grado debían traer una convicción en el grado menor. No se cometió el error.

(2) La instrucción sobre el delito de homicidio, si bien fue suscinta, y no tan detallada como al hacer la distinción entre los dos grados del delito de asesinato, constituyó una exposición correcta de la ley aplicable. Añadió además el juez que si hubiere duda de haberse cometido un delito de asesinato en primer grado o en segundo grado o uno de homicidio voluntario, es el deber del jurado dar el beneficio de la duda al acusado y traer un veredicto de homicidio voluntario. La instrucción fue adecuada.

■ (3) Hemos examinado el testimonio sobre la buena reputación del apelante y solamente hemos encontrado una

manifestación al respecto dicha por uno de los testigos de defensa que lo conoce desde pequeño (T.E. pág. 205) al efecto de que "Yo lo conozco como una bella persona." Tal expresión, de por sí, al no contener hechos que puedan fundamentar dicha conclusión, resulta débil y escasa y no constituye el tipo de prueba que pueda justificar unas instrucciones al efecto de que el propósito de dicha prueba es crear duda razonable. Especialmente cuando la propia declaración del apelante estableció en términos definitivos su culpabilidad. Y, habiendo sido la instrucción impugnada una pequeña parte de las extensas instrucciones ofrecidas, el hecho de que la instrucción sobre reputación pudiera ser errónea en cierto aspecto, no constituye un perjuicio sustancial de sus derechos que requiera revocar su convicción. *Pueblo* v. *Negrón Vélez*, supra, pág. 439.

■ (4) La defensa solicitó del tribunal que instruyese al jurado sobre defensa propia. El juez transmitió instrucciones sobre este extremo. El hecho de que las instrucciones sobre defensa propia no se hubieren transmitido hasta que las mismas fueron solicitadas por la defensa no afectó los derechos fundamentales del apelante. Las instrucciones transmitidas sobre ese concepto fueron claras y adecuadas.

■ (5) En cuanto a las instrucciones sobre la admisión de la declaración jurada del apelante, consideramos que las mismas eran innecesarias. La Regla 151.1 de Procedimiento Criminal dispone que corresponde al juez en ausencia del jurado oír y resolver todas las cuestiones de hecho y de derecho referentes a la admisibilidad de una confesión del acusado. *Pueblo* v. *Figueroa García*, 91 D.P.R. 729 (1965). La propia Regla 151.1 dispone que el acusado no está impedido de presentar al jurado evidencia relativa al peso o credibilidad de la confesión y sobre las circunstancias bajo las cuales fue ésta obtenida. En el caso de autos la defensa no presentó prueba en presencia del jurado que justificara una instruc-

ción al respecto. Tampoco solicitó una instrucción especial sobre dicho extremo.

Por las razones expuestas no se cometió el tercer error.

■ Aunque el apelante no ataca la sentencia de un año de cárcel que se le impuso por la infracción al Art. 4 de la Ley de Armas, 25 L.P.R.A. sec. 414, por tratarse de un delito menos grave se reduce la pena por dicha infracción al término de seis meses de cárcel en virtud de la Ley Núm. 8 de 7 de julio de 1971. *Pueblo* v. *De Jesús Rosado*, 100 D.P.R. 536 (1972).

Así modificada, se confirma la sentencia dictada por el Tribunal Superior, Sala de Aguadilla, en este caso el 12 de noviembre de 1968.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Díaz Cruz disintió en voto separado, con el cual concurren los Jueces Asociados Señores Dávila, Cadilla Ginorio e Irizarry Yunqué.

(Fdo.) José L. Carrasquillo

*Secretario*

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz en el cual concurren los Jueces Asociados Señores Dávila, Cadilla Ginorio e Irizarry Yunqué

San Juan, Puerto Rico, a 31 de mayo de 1973

Al confirmar esta sentencia estamos devolviendo las garantías constitucionales fundamentales del procedimiento criminal a un escritorio de fiscalía, consumando un retroceso en la dirección inquisitorial del "star chamber". El apelante cometió un crimen pasional, es un analfabeto que en la etapa más crítica del proceso, nublado su precario entendimiento por la tragedia ocurrida pocas horas antes, se enfrenta a un fiscal sin abogado. El fiscal le habla de un derecho a declarar

o a no declarar, y a tener abogado, en un léxico que difícilmente podía llevar al individuo el concepto de lo que estaba renunciando. Las advertencias héchasle no pasaron de ser una fórmula intrascendente. La confesión así obtenida se lee al jurado, debemos inferir que para obtener el mayor castigo contra el acusado, pues él declaró en el juicio y admitió haber atacado con machete a su antagonista.

El fiscal es una parte adversaria, claramente identificado con un lado; es un esforzado competidor en la valla donde se juega la libertad de un hombre. Esa realidad hizo que se le privara hace años de sus anteriores facultades para ordenar arrestos, fijar fianza, determinar causa probable, y ordenar archivo de casos. Si se le ha quitado poder para ordenar un arresto o graduar una fianza ¿se le va a permitir que tome a solas una confesión y haga del juicio una tragicomedia?

El jurado, que ante un crimen pasional pudo absolver o traer un veredicto de homicidio, oída la confesión produce un veredicto de asesinato en segundo grado con pena mínima de 10 años de presidio.

No es la simple oferta de abogado sino la presencia y la participación cabal y efectiva de éste en los pasos conducentes a la confesión lo que haría ésta admisible sin dejar en nuestra conciencia la insatisfacción que se deriva de este caso. Habiendo tanto abogado dispuesto a auxiliar a un acusado en su confrontamiento con los expertos en la ley y el procedimiento criminal la dignidad de nuestro proceso criminal bien merece que erradiquemos definitivamente la farsa de confesiones "voluntarias y espontáneas" sin asistencia legal.

Peca de inconsistente el criterio de la mayoría, pues mientras nos esmeramos con extremado escrúpulo para cerciorarnos de la renuncia espontánea e inteligente al juicio por jurado por parte de un acusado que ya ha tenido el beneficio del consejo y asesoramiento de un defensor de alta idoneidad, y también revisamos con puntillosa exigencia las expresiones del juez en sus instrucciones y su intervención en el examen de

testigos, guardamos la acción depuradora ante una confesión tomada sin asistencia legal aun cuando ésta tiene una consecuencia incomparablemente mayor en el resultado del juicio y en la garantía de libertad del individuo para cuya preservación existe el debido proceso de ley. Volveremos al método fácil de encaminar la investigación hacia el logro de una confesión, que es el método inquisitorial más cómodo, y una vez lograda, el juicio será un auto sacramental.

La sentencia está fatalmente viciada y teñida por la confesión obtenida bajo las circunstancias que se indican por lo que ha debido revocarse y concederse un nuevo juicio.